IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR AN ORDER ESTABLISHING PROCEDURES
FOR THE REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

Caché, Inc., on behalf of itself and its affiliated debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors"), hereby submits this motion (this

"Motion") for entry of an order approving procedures for the rejection of executory contracts and

unexpired leases throughout its chapter 11 cases.  In support of this Motion, the Debtors

respectfully represent as follows:

**Preliminary Statement**

1.       On February 4, 2015, the Debtors filed their *Motion for Orders

(I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections,

(C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and

Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and

(III) Granting Related Relief* (the "Bidding Procedures and Sale Motion"), seeking authority, in

part, to conduct an auction for the sale of the Debtors' (i) inventory, (ii) furniture, fixtures and

equipment, (iii) intellectual property, (iv) accounts receivable and cash on hand in the stores or

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725).  The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

other closing locations, (v) real property leases and (vi) customer lists (each, an "Asset Class" and collectively, the "Assets"), either on a going-concern basis or via chain-wide store closing sales (the "Store Closing Sales") and liquidation.

2.    In the event that the Successful Bidder at the auction does not seek to purchase the Debtors' assets a going concern, the Debtors have filed this Motion to establish procedures for the rejection of the Debtors' executory contracts and unexpired real property leases on a schedule that will coincide with Store Closing Sales and liquidation process.

**Jurisdiction**

3.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory predicates for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code, Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")  and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

5.    On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently herewith, the Debtors have filed a motion with this Court requesting joint administration of the

Debtors' chapter 11 cases (the "Cases") for procedural purposes only. The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

6.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Anthony DiPippa in Support of First Day Motions* (the "DiPippa Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

7.      In order to liquidate their business or consummate an alternative sale transaction as expeditiously as possible, contemporaneously with the filing of this Motion, the Debtors have filed the Bidding Procedures and Sale Motion seeking authority to enter into an agency agreement with a contractual joint venture composed of SB Capital Group, LLC and Tiger Capital Group, LLC (collectively, the "Stalking Horse") or another successful bidder at an auction. As noted above, the Stalking Horse will, among other things, conduct chain-wide store closing sales and liquidate the Debtors' inventory.[3] The Debtors believe that commencing store

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DiPippa Declaration.

[3] As noted above, the Debtors reserve the ability to go forward with a going concern sale if contemplated by the successful bidder at the auction and to modify the relief sought herein regarding the proposed procedures for the rejection of the Debtors' executory contracts and unexpired real property leases, including without limitation withdrawal of this Motion.

closing sales will maximize value for the Debtors' estates while minimizing the administrative

expenses incurred in these chapter 11 cases.[4]

### Facts Specific To The Relief Requested

8.      As part of the Debtors' efforts to maximize value for their creditors and

other stakeholders, the Debtors are working to eliminate unnecessary administrative burdens on

their estates during their wind-down process.  The Debtors have determined that their estates

would be best served by avoiding the burdens associated with the Debtors' continued

performance under executory contracts (the "Contracts") that were required in connection with

the operation of the Debtors' business in the ordinary course, but will not be required during the

wind-down or after an alternative transaction with an overbidder.  As described above, the

Debtors have filed a motion concurrently herewith seeking, among other things, permission to

enter into an agency agreement with a liquidator to liquidate their inventory and conduct store

closing sales, subject to higher and better offers.  If the successful bid at auction is for the

liquidation of the Debtors' inventory, many of the services provided by the counterparties to the

Contracts (the "Counterparties") will instead be provided by the liquidator during the wind-down

of the Debtors' business.  Moreover, other services provided by the Counterparties will not be

necessary at all.  Therefore, no benefits remain to be conferred upon the Debtors under those

Contracts, and the Debtors seek authority to reject the Contracts pursuant to the procedures set

forth below.

---

[4] The Debtors may, by separate motion, seek to assume and assign certain executory contracts and leases to a designee of a purchaser of their leasehold interests pursuant to the Bidding Procedures and Sale Motion.

9.    As of the Petition Date, the Debtors occupy premises across the United States in connection with the operation of their stores. The Debtors also are party to several other leases used in connection with the operation of their business, including leases for storage facilities. With respect to all of these locations, the Debtors do not own the real property where such stores are located and instead, lease the real property from numerous lessors and other counterparties. As of the Petition Date, the Debtors are tenants under approximately 218 nonresidential real property leases. The Debtors have ceased operations at twenty-one stores (the "Closed Stores")[5] and have or shortly will be filing a separate motion to reject the related leases under which the Debtors are tenant (the "Closed Store Leases"). Moreover, if the successful bid at the auction is for the liquidation of the Debtors' inventory and store closing sales for the Debtors' remaining 197 stores, the Debtors will soon cease operations at most, if not all, of these locations (the "Premises"). The Debtors intend to physically vacate the Premises and surrender the keys, alarm codes or other means of access to each respective landlord (collectively, the "Landlords") as soon as possible following the conclusion of the store closing sales. Absent the

---

[5] The locations of the Closed Stores are:  (i) #123, The Avenues, 10300 Southside Blvd., Space 119, Jacksonville, FL 32256; #228, Cape Cod Mall, 769 Iynnough Road, Route 132, Space S-147, Hyannis, MA 02601; #215, Streets at Southpointe, 6910 Fayetteville Road, Suite #167, Durham, NC 27713; #257, West Town Mall, 40 West Towne Mall, Space B-2, Madison, WI 53719; #161, Westfield Shoppingtown Citrus Park, 7936 Citrus Park, Town Center Mall, Tampa, FL 33625; #282, Village Pointe, 17170 Davenport Street, Suite #104, Omaha, NE 68118; #70, Monroeville Mall, Route 22, Space B-3, Monroeville, PA 15146; #263, Valley Plaza Mall, 2701 Ming Avenue, Space #252, Bakersfield, CA 93304; #213, The Mall at Stonecrest, 8000 Mall Parkway, Space #2320, Lithonia, GA 30038; #252, Ridgedale Center, 12321 Wayzata Boulevard, Space #1050, Minnetonka, MN 55305; #253, Rockaway Townsquare Mall, 301 Mount Hope Avenue, Space #1016, Rockaway, NJ 07866; #122, Haywood Mall, 700 Haywood Road, Box 132, Space 1022, Greenville, SC 29607; #247, Holyoke Mall at Ingleside, P.O. Box 10171, 50 Holyoke Street, #A209, Holyoke, MA 01041; #240, Governors Square Mall, 1500 Apalachee Parkway, Space #2085, Tallahassee, FL 32301; #288, Summit Sierra, 13925 South Virginia Street, Space #238, Reno, NV 89511; #28, Copley Place, 100 Huntington Avenue, Boston, MA 02116; #42, Northbrook Court, 1262 Northbrook Court, Northbrook, IL 60062; #68, Oakbrook Center, 421 Oak Brook Center, Oakbrook, IL 60523; #528, Lynnhaven, 701 Lynnhaven Parkway, Space #F06B, Virginia Beach, VA 23452; #225, Pheasant Lane Mall, 310 Daniel Webster Highway, Space #W-155, Nashua, NH 03060; #237, Stony Point Fashion Park, 9200 Stony Point Parkway, Richmond, VA 23235.

relief requested herein, the Debtors may continue, however, to be obliged to pay rent under the

remaining 218 leases (the "Leases"), even though they have no continuing operations in those

locations and no other productive uses for those Premises.  In that event, the Debtors have

determined that the continued maintenance of the lease obligations at the Premises no longer

would be desirable and the elimination of such lease obligations would maximize the value of

the Debtors' estates.  In the event of liquidation, the Debtors have concluded that, in order to

minimize unnecessary potential costs to their estates, the Leases should be rejected effective as

soon as the store closing sales have been completed at the affected Premises and the Debtors

have vacated the Premises.

10.    In an effort to minimize the postpetition expenses associated with the

Contracts and Leases and the costs attendant to rejecting the Contracts and Leases the Debtors

seek approval of the following procedures (the "Rejection Procedures"):

(a)    Rejection Notice.  The Debtors will file a notice (the "Rejection Notice")
setting forth the proposed rejection of one or more Contracts and/or Leases
and will serve the Rejection Notice via overnight delivery service, email or
fax on: (i) the Counterparty (and its counsel, if known) under the respective
Contract or Lease at the last known address available to the Debtors;
(ii) with respect to real property Leases, any known third party having an
interest in personal property located at the leased Premises; (iii) counsel to
the prepetition lender, Choate Hall & Stewart, Two International Place,
Boston, MA 02110, Attn:  John F. Ventola, Esq.; (iv) the Office of the
United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware
19801 Attn: David L. Buchbinder, Esq. (the "U.S. Trustee"); and (v)
counsel to any committee appointed in the Debtors' chapter 11 cases (the
"Committee") (collectively, the "Rejection Notice Parties").

(b)    Content of Rejection Notice.  The Rejection Notice shall be substantially in
the form attached as Exhibit A to the Motion.  With respect to Leases, the
Rejection Notice shall set forth the following information, based on the best
of the Debtors' information: (i) the street address of real property; (ii) the
name and address of the Landlord; and (iii) the date on which the Debtors
will vacate the Premises.  With respect to all other Contracts to be rejected,

the Rejection Notice shall set forth the following information, based on the best of the Debtors' information: (a) the name and address of the Counterparty; and (b) a brief description of the Contract to be rejected. All Rejection Notices will be accompanied by a copy of the Order granting relief under this Motion.

(c)     Objections. Should a party in interest object to the Debtors' proposed rejection of a Contract or Lease, such party must file and serve a written objection (an "Objection") so that it is filed with this Court and actually received by the following parties (the "Objection Notice Parties") no later than seven calendar days after the date the Rejection Notice is filed: (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones, LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.); (ii) counsel to the prepetition lender, Choate Hall & Stewart, Two International Place, Boston, MA 02110, Attn: John F. Ventola, Esq.; (vi)the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 Attn: David L. Buchbinder, Esq. (the "U.S. Trustee"); and (vii) counsel to any Committee(s). Each Objection must state with specificity the ground for objecting to the proposed Contract or Lease rejection.

(d)     Effects of Failing to File an Objection to a Rejection Notice. If no Objection to a Rejection Notice is timely filed and served, the applicable Contract or Lease shall be deemed rejected on the effective date set forth in the Rejection Notice, or, if no such date is set forth, the date the Rejection Notice is filed with this Court; provided, however, that the effective date of a rejection of a real property Lease (the "Rejection Date") shall not occur until the later of (i) the date the Debtors file and serve a Rejection Notice for the Lease or (ii) the date the Debtors relinquish control of the Premises by notifying the affected Landlord in writing of the Debtors' surrender of the Premises in "broom clean" condition and turn over keys, key codes, and security codes, if any, to the affected Landlord.

(e)     Effects of Filing an Objection to a Rejection Notice. If a timely Objection to a Rejection Notice is filed and received in accordance with the Rejection Procedures, the Debtors shall schedule a hearing on such Objection and shall provide at least seven days' notice of such hearing to the objecting party and the Objection Notice Parties. If this Court ultimately upholds the Debtors' determination to reject the applicable Contract or Lease, then the applicable Contract or Lease shall be deemed rejected (i) as of the Rejection Date or (ii) as otherwise determined by this Court as set forth in any order overruling such objection.

(f)     Consent Orders. Any Objection may be resolved without a hearing by an order of this Court submitted on a consensual basis by the Debtors and the objecting party.

(g)    <u>Deadlines for Filing Claims</u>.  Claims arising out of the rejection of Contracts or Leases must be filed, on or before the later of (i) the deadline for filing proofs of claims established by this Court in these chapter 11 cases or (ii) 21 days after the Rejection Date.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages and from participating in any distributions that may be made in connection with these chapter 11 cases.

(h)    <u>Treatment of Security Deposits</u>.  If the Debtors have deposited funds with a Counterparty or Landlord as a security deposit or other arrangement, such Counterparty may not setoff or otherwise use such deposit without the prior authority of this Court or agreement of the Debtors.

11.      In connection with the foregoing Rejection Procedures, the Debtors also request that they be authorized to execute and deliver all instruments and documents, and take such other actions as may be necessary or appropriate to implement and effectuate the Rejection Procedures as approved by the Court and that entry of the requested order be without prejudice to the Debtors' right to seek further, other, or different relief regarding the Contracts or Leases.

### **Relief Requested**

12.      By this Motion, the Debtors seek an order of the Court authorizing (a) the Rejection Procedures for the rejection of executory contracts and unexpired leases and (b) authority to take any and all actions as may be necessary and appropriate to implement and effectuate the Rejection Procedures as approved by the Court.[6]

---

[6] The Debtors may have claims and/or defenses against the Landlords arising under, or independently from, the Leases.  The Debtors do not waive such claims by filing of this Motion or the rejection of the Leases.  In addition, nothing herein shall be construed as a concession or evidence that the Leases have expired, been terminated, or otherwise currently are not in full force and effect.  Rather, the Debtors expressly reserve all rights with respect thereto, including their right to seek a later determination of these issues and their right to dispute the validity, status, characterization, or enforceability of the Leases.

### Basis For Relief Requested

**A.    Rejection of the Contracts and Leases is a Sound
Exercise of the Debtors' Business Judgment**

13.    Section 365(a) of the Bankruptcy Code provides that a debtor in

possession, "subject to the court's approval, may ... reject any executory contract or unexpired

lease of the debtor." 11 U.S.C. § 365(a). *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),*

973 F.2d 1065, 1075 (3d Cir. 1992). The principal purpose of section 365(a) is to allow a debtor

in possession or trustee "to relieve the bankruptcy estate of burdensome agreements which have

not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.,* 83

F.3d 735, 741 (5th Cir. 1996) (citing *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco*

*Petroleum, Inc.),* 15 F.3d 60, 62 (5th Cir. 1994)). Rejection of an executory contract or

unexpired lease is appropriate where rejection of the contract or lease would benefit the estate.

*See L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.),* 209 F.3d 291, 298

(3d Cir. 2000); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel*

*Corp.),* 872 F.2d 36, 39-40 (3d Cir. 1989).

14.    The decision to assume or reject an executory contract or unexpired lease

is a matter within the "business judgment" of the debtor. *See NLRB v. Bildisco & Bildisco (In re*

*Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is

simply whether rejection would benefit the estate, the 'business judgment' test."); *see also In re*

*Fed. Mogul Global, Inc.,* 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.,* 290

B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard mandates that a court

approve a debtor's business decision unless the decision is the product of bad faith, whim, or

caprice. *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). Accordingly, if a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Fed. Mogul*, 293 B.R. at 126.

15.    As set forth above, the Debtors clearly have satisfied the "business judgment" standard for rejecting the Contracts and Leases. The Contracts and Leases are financially burdensome and unnecessary to the Debtors as they wind-down their business. Moreover, prior to rejecting any of the Contracts and Leases, the Debtors will have ensured that the Contracts and Leases do not have any marketable value beneficial to the Debtors' estates. Accordingly, the Debtors have determined that continued performance under the Contracts and Leases constitute an unnecessary depletion of value of the Debtors' estates and, therefore rejection of the Contracts and Leases reflects the Debtors' exercise of sound business judgment.

**B.    The Rejection Procedures Provide Reasonable Notice and Hearing**

16.    As a procedural matter, Bankruptcy Rule 9014 provides, in part, that "reasonable notice and opportunity for hearing shall be afforded the party against whom the relief is sought." *See* Fed. R. Bankr. P. 9014(a).[7] The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C.

---

[7] Bankruptcy Rule 9014 is made applicable to a motion to reject by Bankruptcy Rule 6006(a), which provides that "[a] proceeding to ... reject ... an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014." Fed. R Bankr. P. 6006(a).

§ 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for a hearing "as [are] appropriate in the particular circumstances").

17.    The Landlords and Counterparties will not be prejudiced by the Rejection Procedures because, prior to receipt of a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to eventually reject their Lease or Contract by notice of this Motion.  Additionally, upon receipt of the Rejection Notice they will receive advance notice of the effective date of the rejection.  *See, e.g., In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject).  Additionally, in the case of unexpired leases of nonresidential real property, the Debtors intend to vacate the Premises upon the date specified in the Rejection Notice, thereby allowing the Landlords to take possession of the property.  *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp.*, No. 98-982, 2000 U.S. Dist. LEXIS 12663, at *44-46 (D.N.J. Aug. 31, 2000) (holding bankruptcy court properly exercised its discretion in adjusting the effective date of rejection from the date the court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding

that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible). The Debtors submit that the proposed Rejection Procedures balance the need for an expeditious reduction of burdensome costs to the Debtors' estates while providing appropriate notice of the proposed rejection to the Landlords and Counterparties.

18.    In summary, the Debtors believe that the proposed rejection of the Contracts and Leases is tailored to minimize administrative expenses, maximize the recovery for creditors in these chapter 11 cases, and, with respect to the Leases, return control of the Premises to the Landlords as quickly as possible. In the exercise of their sound business judgment, the Debtors thus seek authority to reject the Contracts and Leases effective as of the Rejection Date.

**C.    Compliance with Bankruptcy Rule 6006(1)**

19.    Bankruptcy Rule 6006(1), in relevant part, requires that a motion to reject multiple executory contracts or unexpired leases:

> (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
>
> (2) list parties alphabetically and identify the corresponding contract or lease;
>
> (3) specify the terms, including the curing of defaults, for each requested assumption or assignment;
>
> (4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment; if any
>
> (5) be numbered consecutively with other omnibus motions to assume, assign, or reject executor contracts or unexpired leases; and
>
> (6) be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). The Debtors will comply with the applicable procedural requirements of Bankruptcy Rule 6006(f) when serving the Rejection Notices.

20.     Under the circumstances, given the substantial number of Contracts and Leases the Debtors are seeking to reject, obtaining Court approval of each rejection would impose unnecessary burdens on the Debtors and the Court and result in costs to the Debtors' estates that would correspondingly decrease the economic benefit of rejection. Accordingly, the Debtors propose to streamline the process as set forth in the Rejection Procedures, consistent with applicable law, in order to minimize costs to the Debtors' estates and reduce the burden on the Court's docket, while protecting Counterparties and Landlords by providing such parties notice and an opportunity to object to the proposed rejection. For the foregoing reasons, the Debtors submit that the adoption of the Rejection Procedures is in the best interest of their estates, their creditors and all other parties in interest.

### Notice

21.     The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) the Debtors' prepetition and postpetition lenders; (d) the Landlords; (e) all Counterparties known to the Debtors as of the date hereof; and any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

22.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: February 4, 2015         PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Joshua M. Fried (CA Bar No. 181541)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:      ljones@pszjlaw.com
             dbertenthal@pszjlaw.com
             jfried@pszjlaw.com
             crobinson@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in Possession