IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**APPLICATION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), FED. R. BANKR. P. 2014 AND 5002, AND DEL. BANKR. L.R. 2014-1 AND 2016-2(h), FOR ENTRY OF AN ORDER (I) AUTHORIZING EMPLOYMENT AND RETENTION OF JANNEY MONTGOMERY SCOTT LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) MODIFYING CERTAIN INFORMATION REQUIREMENTS OF DEL. BANKR. L.R. 2016-2**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby apply to this Court for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order") (i) authorizing the employment and retention of Janney Montgomery Scott LLC ("Janney") as investment banker for the Debtors *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions set forth in that certain engagement letter, dated as of January 15, 2015 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to Exhibit A attached hereto and (ii) modifying certain information requirements of Local Rule 2016-2 (the "Application"). In support of this Application, the Debtors submit the Declaration of Daniel Shea of Janney (the "Shea Declaration"), attached

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

hereto as <u>Exhibit B</u>. In further support of the Application, the Debtors respectfully state as follows.

### JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

### BACKGROUND

3. On February 2, 2015 (the "<u>Petition Date</u>"), the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Concurrently herewith, the Debtors have filed a motion with this Court requesting joint administration of the Debtors' chapter 11 cases (the "<u>Cases</u>") for procedural purposes only. The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these chapter 11 cases, and no official committee has yet been appointed by the Office of the United States Trustee.

4. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, are set forth in detail in the *Declaration of Anthony DiPippa in Support of First Day Motions* (the "DiPippa Declaration"), which is incorporated herein by reference.[2]

## RELIEF REQUESTED

5. By this Application, the Debtors seek to (i) employ and retain Janney as their investment banker in accordance with the terms and conditions of the Engagement LetterEngagement Letter, *nunc pro tunc* to the Petition Date, and (ii) modify certain information requirements related to compensation requests set forth in Local Rule 2016-2.

6. The Debtors bring this Application because of the critical importance of a investment banker to assist in the performance of their duties. The Debtors believe that Janney is well qualified to provide investment banking services and that the terms of its retention are reasonable.

## JANNEY'S QUALIFICATIONS

7. The Debtors have determined, in the exercise of their business judgment, that the size of their business operations and the complexity of the financial difficulties attendant upon operations of such scope, require them to employ an investment banker with knowledge of

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DiPippa Declaration.

3

the Company's industry and businesses and experience with the chapter 11 process, and to advise them with respect to these chapter 11 cases. The Debtors further believe that Janney is well-qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. Janney will coordinate with the other retained professionals in these chapter 11 cases to eliminate unnecessary duplication or overlap of work. Retaining such an advisor will enable the Debtors to carry out their duties in the chapter 11 cases.

8. Janney is a leading full-service investment banking and financial services firm serving corporate, institutional, governmental agency and individual clients. Established in 1832, Janney is headquartered in Philadelphia and has Capital Markets offices in Philadelphia, New York, Atlanta, Baltimore, Boston, Charlotte, Chicago, Cleveland, Dallas, Hartford, Minneapolis, San Francisco and Washington D.C., as well as over 100 Private Client offices in 19 states. Janney is an independently-operated subsidiary of The Penn Mutual Life Insurance Company, one of the largest mutual insurance companies in the United States. Janney has over $500 million of annual revenue, a capital base of $388 million and over 250 capital markets professionals and investment bankers.

9. Janney's professionals have extensive experience in the reorganization, restructuring and sale of underperforming companies or such companies' assets, both out of court and in chapter 11 proceedings. Janney professionals have been involved with several bankruptcy proceedings, representing both debtors and buyers, including the following representative cases: Pilgrim's Pride Corporation; Country Products Group; Cannondale Corporation; Cirio Finanziaria S.p.A.; and, Standard Automotive Corporation. Janney professionals have significant

experience in marketing distressed businesses, including the following representative transactions: Alloy Merchandise, LLC; AC Moore Arts & Crafts Inc.; Tasty Baking Company; and, Cytogen, Inc. Moreover, Janney has extensive experience in providing investment banking services in the Consumer & Retail industry and more specifically within the softlines sector. Such experience includes providing general financial advisory services and being involved as advisors with respect to the raising of capital, mergers, acquisitions, and divestitures for companies in this industry. Accordingly, Janney and the professionals it employs are well qualified to represent the Debtors in the matters for which Janney is proposed to be employed.

10. The Debtors have selected Janney as their investment banker based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm to provide advice with respect to these chapter 11 cases, and (b) Janney's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

## JANNEY'S PREPETITION SERVICES

11. Before the Petition Date, on August 7, 2014, the Company engaged Janney to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a strategic recapitalization, merger or sale of its business. This engagement was more fully described in a letter agreement dated August 7, 2014 between the Company and Janney (the "Original Engagement Letter"), a copy of which is attached hereto as Exhibit C. As of January 15, 2015, the Debtors further engaged Janney to provide general investment banking and financial advice in connection with the Debtors' attempts to complete a sale, reorganization

5

and/or restructuring of all or a significant portion of the Debtors' outstanding indebtedness and to prepare for the commencement of these chapter 11 cases.

12. In rendering prepetition services to the Company in connection with these matters, Janney has worked closely with the Company's management and other retained professionals and has become well-acquainted with the Debtors' business operations and capital structure. Accordingly, Janney has developed significant expertise regarding the Debtors that will assist it in providing effective and efficient services during these chapter 11 cases. Should the Court approve the Debtors' retention of Janney as investment banker, Janney will continue, without interruption, to perform the services for the Debtors as described herein.

## SERVICES TO BE PROVIDED

13. Janney has agreed to provide assistance to the Debtors in accordance with the terms and conditions which are set forth in the Shea Declaration filed in support of this Application and in the Engagement Agreement which is attached to the Order as Exhibit 1 and incorporated herein by reference.[3] The Engagement Letter amends and supplements the Original Engagement Letter. The services to be provided by Janney in these chapter 11 cases include the following:

(a) assisting the Company in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Company in the preparation of an offering memorandum;

(b) assisting the Company in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners;

---

[3] The following is a summary of the services provided under the Engagement Letter. In the event of any inconsistency between the Engagement Letter and this summary, the Engagement Letter shall govern in all respects. Unless otherwise defined in this section and the section titled "Professional Compensation", capitalized terms shall have the meanings ascribed to them in the Engagement Letter.

6

DOCS_DE:197653.2 11903/001

(c) assisting the Company with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

(d) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

(e) attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Janney mutually agree; and

(f) providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date.

14. It is necessary for the Debtors' efforts to maximize the value of their assets that the Debtors employ Janney to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these cases. Specifically, Janney will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

15. During the twelve months immediately preceding the Petition Date, Janney received the following payments in connection with Janney's engagement under the Original Engagement Letter: fee payments of $100,000 and reimbursement for reasonable out-of-pocket expenses in the amount of $10,899.70. As more fully described in the Engagement Letter, in consideration of the services provided by Janney, the Company has agreed to pay

Janney the proposed compensation set forth in the Engagement Letter during these chapter 11 cases (the "Fee Structure"):[4]

    a)    <u>Initial Retainer Fee</u>: An initial retainer fee of $100,000 (the "<u>Retainer Fee</u>").

    b)    <u>Monthly Retainer Fee:</u> A monthly cash fee of $50,000 ("<u>Monthly Fee</u>") which Monthly Fees, together with the Retainer Fee, shall be in addition to the Transaction Fees described below.

    c)    <u>Transaction Fees(s):</u> In addition to the other fees provided for in the Engagement Letter, the Company shall pay Janney the following transaction fee(s) if a Transaction is entered into by the Company during the term of Janney's engagement or at any time during a period of twelve (12) months following the effective date of termination of Janney's engagement: (i) 1.25% for amounts equal to $15.0 milion to $20.0 million of Consideration of the Transaction; (ii) 1.75% for amounts greater than $20.0 million but less than $30.0 million of Consideration; and (iii) 2.25% on amounts equal to or greater than $30.0 million of Consideration, provided, however, that in no event shall Janney receive a transaction fee, in the aggregate, of less than $250,000.

16.    In addition to all of the other fees and expenses described in the Engagement Letter, the Company shall, upon Janney's request and in accordance with applicable orders of the Bankruptcy Court, reimburse Janney for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder.

17.    The Debtors believe that the compensation structure described above is (i) comparable to compensation generally charged by investment banking firms of similar stature to Janney for comparable engagements, both in and out of bankruptcy proceedings, and (ii) reflects

---

[4] The following is a summary of the Fee Structure. In the event of any inconsistency between the Engagement Letter and this summary, the Engagement Letter shall govern in all respects. Capitalized terms used in this summary but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

a typical fee structure for Janney and other leading investment banking firms which do not bill their clients on an hourly basis, but are generally compensated on a transactional basis.

18. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Janney in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees.

19. Janney's restructuring expertise, as well as its capital markets knowledge, financing skills, knowledge and experience within the retail industry and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Janney's engagement hereunder, were important factors to the Debtors in determining the amount of Janney's fees, and the Debtors believe that the ultimate benefit to the Debtors of Janney's services hereunder cannot be measured merely by reference to the number of hours to be expended by Janney's professionals in the performance of such services.

20. The Debtors propose that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code and will not be subject to the standard of review in section 330 of the Bankruptcy Code.

### MODIFICATION OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

21. Consistent with its ordinary practice and the practice of investment bankers and financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Janney does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Janney will maintain records in support of any actual, necessary costs and expenses incurred in

9

connection with the rendering of its services in these cases. As Janney's compensation will be calculated and paid based on a fixed, deferred transaction fee (in addition to Monthly Fees), Janney requests that it not be required to file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Instead, notwithstanding that Janney does not charge for its services on an hourly basis, Janney will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Debtors, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

## JANNEY'S DISINTERESTEDNESS

22. To the best of the Debtors' knowledge, (a) Janney is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtors and their estates and (b) except as disclosed in the Shea Declaration, has no connection to the Debtors or to their significant creditors or certain other potential parties-in-interest ("Parties-In-Interest") whose names were supplied to Janney by the Debtors.[5]

23. Also, to the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Shea Declaration: (i) to the best of Daniel Sheas'

---

[5] The list of Parties-In-Interest supplied to Janney by the Debtors is attached as Schedule 2 to the Shea Declaration. To the extent that Janney's research of relationships with these Parties-In-Interest indicated that Janney has provided in the recent past or is currently providing services to any of these entities in matters unrelated to these chapter 11 cases, Janney has so indicated in Schedule 3 to the Shea Declaration.

10

knowledge, information and belief, none of Janney's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in these cases and, as such the Debtors believe that Janney is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained; and (ii) to the extent Janney discovers any facts bearing on the matters described herein during the period of Janney's retention, they will supplement the information contained in the Shea Declaration.

24.  As described in more detail in the Shea Declaration, Janney has researched its client database, inquired of persons-with-knowledge, conducted records review and performed other due diligence to determine whether it has any relationships with the entities (individually, an "Interested Party" and, collectively, the "Interested Parties") that were identified to Janney by the Debtors in Schedule 2 attached thereto. Due to the size of Janney and the number of creditors and other parties in interest involved in these cases, however, Janney may have represented certain of the Debtors' creditors or other Parties-In-Interest in matters wholly unrelated to the chapter 11 cases. Except as may be described in the Shea Declaration, Janney does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or their estates.

25.  Also, in accordance with section 504 of the Bankruptcy Code, Janney has informed the Debtors that there is no agreement or understanding between Janney and any other entity, other than an employee of Janney, for the sharing of compensation received or to be received for services rendered in connection with these chapter 11 cases.

11

## **INDEMNIFICATION AND CONTRIBUTION PROVISIONS**[6]

26.     Pursuant to the Indemnification and Contribution Provisions attached as Annex A to the Original Engagement Letter, the Debtors have agreed to (i) indemnify and hold harmless Janney and its affiliates and their respective directors, officers, employees, and agents, (collectively, the "Indemnified Persons") to the fullest extent lawful, from and against any and all losses, claims, damages liabilities or expenses (or actions in respect thereof), arising out of or related to the retention of Janney by the Debtors and (ii) to reimburse each Indemnified Party for all reasonable expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing for, or defending, any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity arising out of or relating to this Engagement Letter, or such engagement, transaction or actions.

27.     However, notwithstanding anything to the contrary in the Engagement Letter or any agreements incorporated by reference in the Engagement Letter, the Debtors' agreement to indemnify and hold Janney harmless is modified as follows:

(a)     Subject to the provisions of subparagraphs (b) and (c) beneath the Debtors are authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, Janney and its present and former partners, principals and employees in accordance with the terms of the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter, but not for any claim arising from, related to, or in connection with Janney's postpetition performance of any other services other than those in connection with the engagement, unless

---

[6] The following is only a summary of the Engagement Letter's indemnification and contribution provisions. In the event of any inconsistency between the Engagement Letter and this summary, the Engagement Letter shall govern in all respects.

such post-petition services and indemnification, contribution and reimbursement therefore are approved by the Court.

(b) Notwithstanding any indemnification provisions of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify Janney and provide contribution and reimbursement to Janney (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Janney's bad faith, gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Janney's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), beneath, to be a claim or expense for which Janney should not receive indemnity, contribution and reimbursement under the terms of the Engagement Letter, as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Janney believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the Order), including without limitation the advancement of defense costs, Janney must file an application therefore in this Court, and the Debtors may not pay any such amounts to Janney before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Janney for indemnification, contribution or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Janney.

(d) Any limitation on liability or any amounts to be contributed by the parties to the Engagement Letter under the terms of the Engagement Letter shall be eliminated.

**RETENTION PURSUANT TO BANKRUPTCY CODE SECTION 328(a)**

28. The Debtors are seeking to retain Janney pursuant to Bankruptcy Code section 328(a). Section 328(a) provides, in relevant part, that a debtor "with the court's approval,

13

may employ or authorize the employment of a professional person under section 327, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits this Court to approve the terms of Janney's engagement as set forth in the Engagement Letter.

29. The Debtors submit that the fee structure, expense reimbursements and indemnification provisions are reasonable terms and conditions of employment under Bankruptcy Code section 328(a) in light of the following: (a) the nature and scope of services to be provided by Janney; (b) industry practice with respect to the fee structures and indemnification provisions typically utilized by leading investment banks and investment bankers that do not bill their clients on an hourly basis; (c) market rates charged for comparable services both in and out of the chapter 11 context; (d) Janney's substantial experience with respect to financial restructuring and investment banking; and (e) the nature and scope of work already performed by Janney prior to the Petition Date.

30. The terms of the Engagement Letter were negotiated in good faith and at arm's-length between the Debtors and Janney and reflect the Debtors' evaluation of the extensive work that has been and will be performed by Janney and its financial advisory expertise. The Debtors acknowledge and agree that the fee structure was agreed upon by the parties in anticipation of a substantial professional commitment of time and effort by Janney and its professional staff under the Engagement Letter, and in light of the fact that such commitment may foreclose other opportunities for Janney and its professional staff and that the actual time

and commitment required of Janney and its professional staff to perform the services under the Engagement Letter may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

31. Furthermore, the fee structure is consistent with and typical of compensation arrangements entered into by Janney and other comparable firms in connection with the rendering of similar services under similar circumstances. Janney's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Janney's engagement, were all important factors in determining the fee structure. The Debtors believe that the ultimate benefit of Janney's services cannot be measured by reference to the number of hours to be expended by Janney's professionals in the performance of such services. Accordingly, the Debtors submit that the fee structure is both fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

32. The Debtors propose that, notwithstanding Janney's retention under section 328(a), the United States Trustee will retain the right to object to the compensation to be paid to Janney pursuant to the Engagement Letter based on the reasonableness standard provided for in Bankruptcy Code section 330, provided that reasonableness for this purpose will be an evaluation by comparing the fees payable to Janney in these cases to the fees paid to other investment banking firms for comparable services in other chapter 11 cases or out-of-court restructurings, and will not be evaluated primarily on the basis of time expended or the length of these chapter 11 cases.

DOCS_DE:197653.2 11903/001

33. As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Janney intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the fee structure set forth in the Engagement Letter.

## COMPLIANCE WITH LOCAL RULE 9013-1(f)

34. The Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## NOTICE

35. The Debtors will provide notice of this Application to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) the Debtors' prepetition and post-petition lenders; and (d) any party that, as of the filing of this Application, has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

36. No previous application for the relief requested herein has been to this or any other court.

DOCS_DE:197653.2 11903/001

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that the Court enter an order (i) authorizing the Debtors to employ and retain Janney as their financial advisor and investment banker pursuant to the terms of the Engagement Agreement, effective as of the Petition Date, and (ii) granting the Debtors such other and further relief as is just and proper.

Dated: February 4, 2015

CACHE, INC., et al.

_____
Mark Renzi
Chief Restructuring Officer