IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO EMPLOY AND RETAIN FTI CONSULTING INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL PERSONNEL, AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED SERVICES, *NUNC PRO TUNC* AS OF THE PETITION DATE, AND LIMITED WAIVER OF DEL. BANKR. L.R. 2016-2**

The above-captioned debtors and debtors in possession (the "Debtors") hereby submits this motion (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Debtors to retain FTI Consulting Inc. ("FTI"), pursuant to the terms and conditions of that certain letter agreement between FTI and the Debtors dated January 15, 2015 (the "Engagement Letter"), to (i) provide Mark Renzi ("Mr. Renzi") as Chief Restructuring Officer ("CRO") of the Debtors, (ii) provide additional personnel (the "Additional Personnel"), and (iii) provide financial advisory and restructuring-related services to the Debtors, in each instance *nunc pro tunc* to the commencement of these cases (the "Petition Date"); and (b) granting a limited waiver of Local Rule 2016-2. A copy of the Engagement Letter is attached hereto as Exhibit B. In support of this Motion, the Debtors submit

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

the Declaration of Mark Renzi (the "Declaration"), attached hereto as Exhibit C. In further support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

### Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Concurrently herewith, the Debtors have filed a motion with this Court requesting joint administration of the Debtors' chapter 11 cases (the "Cases") for procedural purposes only. The Debtors are operating

their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, are set forth in detail in the *Declaration of Anthony DiPippa in Support of First Day Motions* (the "DiPippa Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

### Relief Requested

6. By this Motion, the Debtors seek the entry of an order, in substantially the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code: (a) authorizing the Debtors to retain FTI, pursuant to the terms and conditions of the Engagement Letter, to (i) provide Mr. Renzi as CRO of the Debtors, (ii) provide the Additional Personnel, and (iii) provide financial advisory and restructuring-related services to the Debtors, in each instance *nunc pro tunc* to the Petition Date; and (b) granting a limited waiver of Local Rule 2016-2

### Scope of Services

7. Consistent with the terms of the Engagement Letter, Mr. Renzi as CRO and the Additional Personnel are charged with assisting the Debtors with its various operational,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DiPippa Declaration.

administrative, and financial needs arising in connection with these chapter 11 cases. More specifically, Mr. Renzi, with the assistance of the Additional Personnel from FTI, will provide various services which may include, but are not necessarily limited to, the following (collectively, the "Services"):[3] More specifically, but without limitation, the anticipated services include the following:

- (a) Report directly to the Chief Executive Office and the Debtors' Board of Directors (the "Board of Directors");

- (b) Lead efforts to facilitate the Debtors' restructuring efforts;

- (c) Coordinate the development of a restructuring plan and supporting financial projections and work together with the Debtors' other advisors to effectuate a sale or chapter 11 plan;

- (d) Lead efforts to assess capital required to consummate a chapter 11 plan and/or the liquidity required to bridge to a sale of the Debtors' assets in a 363 transaction;

- (e) Validate, integrate and augment existing analyses if necessary to help facilitate a successful restructuring;

- (f) Coordinate with such third party real estate advisors retained by the Debtors in conjunction with real estate analyses and related negotiations;

- (g) Lead the development of informational materials to support store closing process and work with counsel on negotiating with inventory disposition firms and drafting an agency agreement; and

- (h) Work collaboratively with all parties-in-interest including but not limited to secured creditors, factors, unsecured creditors, vendors, landlords, administrative creditors, shareholders, existing management and employees of the Debtors to effectuate the Debtors' restructuring.

8.  Subject to this Court's approval of the relief requested in this Motion, Mr. Renzi, as CRO, and the Additional Personnel of FTI are willing to provide the Services to the

---

[3] To the extent that this Motion and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

Debtors.[4] Pursuant to the Engagement Letter, Mr. Renzi will report directly to the Debtors' Chief Executive Officer and Board of Directors and is anticipated to spend 25-35 hours per week in this assignment. FTI will coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

### Compensation

9. For the services rendered by Mr. Renzi pursuant to the Engagement Letter, the Debtors will pay FTI a monthly fee in the amount of $70,000 (or at a weekly rate of $15,600) and the Additional Personnel from FTI have agreed to be paid according to the following fee structure:

|  | Per Hour (USD) |
| --- | --- |
| Senior Managing Directors | $800-925 |
| Directors / Managing Directors | $580-765 |
| Consultants / Senior Consultants | $300-550 |
| Administrative / Paraprofessionals | $125-250 |

10. FTI is seeking a limited waiver from maintaining time records as set forth in Local Rule 2016-2 in connection with the services to be rendered pursuant to the Engagement Letter to permit FTI to record its time in half-hour increments.

11. The fee structure is consistent with and typical of compensation arrangements entered into by FTI and other comparable firms in connection with the rendering of similar services under similar circumstances.

12. As noted above, FTI has provided prepetition financial and restructuring services to the Debtors. During the one-year period prior to the commencement of these chapter

---

[4] Prepetition, FTI provided the services of one its Directors on a fixed fee basis. Post-petition, FTI will utilize its personnel at the hourly rates set forth below for any Additional Services provided on behalf of the Debtors.

11 cases, FTI has received $234,000 from the Debtors for services performed and expenses incurred prior to the Petition Date. In addition, FTI has received, and continues to hold $90,000 as a retainer from the Debtors.

13. Other than as set forth herein or in the Engagement Letter, there is no proposed arrangement between the Debtors and FTI for compensation to be paid in these chapter 11 cases.

14. FTI is not a creditor of the Debtors' estates, and has been fully paid by the Debtors for all prepetition services rendered by FTI to the Debtors.

### Reporting Requirements

15. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under section 363 of the Bankruptcy Code (sometimes referred to as the "Jay Alix Protocol" or the "Protocol"), FTI intends to file with the Court and serve on the Debtors, the U.S. Trustee and any statutory committee(s) appointed in these cases (collectively, the "Committee" and, together with the Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 30th of each month for the previous month, which report would include the names and functions filled by all FTI personnel assigned to this engagement. The Staffing Report (and FTI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

16. In addition, FTI will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on

a quarterly basis, which Compensation Reports will be filed by the 30th of the month following the end of the previous quarter. The Compensation Reports would summarize the service provided, identify the compensation earned, itemize expenses incurred and provide for an objection period of 21 days from the filing and service of such Compensation Report. All such compensation would be subject to review by this Court if an objection is filed.

### Indemnification and Liability Limitation Provisions

17.    The Engagement Letter contains standard indemnification and limitation of liability language with respect to FTI's services. Notwithstanding any provisions of the Engagement Letter to the contrary, in accordance with the Protocol, FTI has agreed otherwise, as set forth below.

18.    With respect to Mr. Renzi in his capacity as CRO, the Debtors shall indemnify Mr. Renzi on the same terms as provided to the Debtors' other officers and directors under the Debtors' by-laws and applicable state law, and pursuant to available insurance coverage under the Debtors' directors' and officers' insurance policies.

19.    Finally, notwithstanding any provisions of the Engagement Letter to the contrary, FTI has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to FTI's engagement in these cases.

### FTI's Qualifications

20. Under the circumstances, the Debtors have determined that obtaining the ongoing services of a CRO and other personnel with turnaround and chapter 11 experience will substantially enhance its ability to (a) operate and meet its administrative obligations in these cases and (b) preserve and maximize the value of its assets pending any sale. As such, the Debtors have chosen to utilize FTI personnel as appropriate and have appointed Mr. Renzi of FTI to the position of CRO.

21. FTI has extensive experience in providing restructuring services in and out of chapter 11 proceedings and has an excellent reputation for the services it has rendered on behalf of debtors and creditors throughout the United States. Among many other examples, FTI has provided (a) restructuring and turnaround advisory services to clients including: NewPage Corporation; Chrysler Financial Services Americas LLC; Digital Domain Media Group, Inc.; Cadence Innovation LLC; Performance Transportation, Inc.; and Chrysler Motors LLC; and (b) financial advisory services to the lenders or unsecured creditors of such companies as General Motors Corporation; Coach America Holdings Inc.; and Swift Transportation Inc.

22. As such, the Debtor believes that FTI is well qualified and able to advise the Debtor in a cost-effective, efficient and timely manner. The Debtors have been advised by FTI that it will endeavor to coordinate with the other professionals retained in these bankruptcy cases to eliminate unnecessary duplication or overlap of work. Mr. Renzi was appointed as CRO by the Board of Directors on January 14, 2015 and is very familiar the Debtors' restructuring

efforts. Therefore, the Debtors submit that the retention of FTI is in the best interests of their estates, creditors and other stakeholders in these cases.

## Basis for Relief

**A.     The Debtors Have Exercised Their Sound and Prudent Business Judgment**

23.     Section 363 of the Bankruptcy Code provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

24.     The retention of corporate officers, including in conjunction with the retention of associated turnaround and advisory firms to provide related services, is proper under section 363 of the Bankruptcy Code, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. *See, e.g., In re Endeavour Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (order authorizing debtors' retention of chief restructuring officer); *In re Devonshire PGA Holdings, LLC*, Case No. 13-12460 (CSS) (Bankr. D. Del. Oct. 16, 2013) (same); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (order authorizing retention of Alvarez & Marsal to provide an interim chief executive officer and chief restructuring officer and certain additional officers and personnel); *In re Archbrook Laguna Holdings LLC*, No. 11-13292 (SCC) (Bankr. S.D.N.Y. Aug. 3, 2011) (order authorizing retention

of chief restructuring officer pursuant to sections 363(b) and 105(a) of the Bankruptcy Code); *In re Calpine Corp.*, No.05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 17, 2007) (order authorizing employment of interim chief financial officer pursuant to section 363 of the Bankruptcy Code); *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) (order designating chief restructuring officer and chief financial officer pursuant to section 363 of the Bankruptcy Code).

25.  Entry into the Engagement Letter and retaining FTI to provide Mr. Renzi as CRO and the Additional Personnel, and the financial advisory and restructuring-related services, upon the terms set forth in the Engagement Letter, this Motion and any order approving this Motion, would enable the Debtors to most efficiently administer these chapter 11 cases, address issues arising in chapter 11, and preserve and maximize the value of the estates. The Debtors require the assistance of qualified and experienced personnel to assist in these matters. Thus, the Debtors believe that it would be in their best interest and in the best interests of their estates, creditors and other parties-in-interest for the Court to grant the relief requested herein, with such relief being deemed effective as of the Petition Date.

26.  The Debtors believe that FTI's fee structure is fair and reasonable in light of the type of services being provided and is comparable to those generally charged by firms of similar stature to FTI for comparable engagements. In addition, given the numerous issues FTI may be required to address in these cases, the intense effort expected to be required over certain periods of time (particularly at the outset of these cases), FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise and the market prices

for FTI's services for engagements of this nature in an out-of-court context, the Debtors believe that the FTI fee arrangement is fair and reasonable.

**B.    The Proposed Retention Comports with the Bankruptcy Code and the Protocol**

27.    FTI will provide the Notice Parties with the Staffing Reports and the Compensation Reports. Because the Debtors are seeking to retain FTI and a CRO pursuant to section 363 of the Bankruptcy Code and not under section 327 of the Bankruptcy Code, FTI is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, the Debtors request that fees and expenses of FTI incurred in the performance of the above-described services be treated as an administrative expense of the Debtors' chapter 11 estates and be paid by the Debtors in the ordinary course of business, without the need for FTI to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than those described above.

28.    In addition, because the Debtors are not seeking to retain FTI as a professional under section 327 of the Bankruptcy Code, there is no requirement that FTI, Mr. Renzi or any of the Additional Personnel be disinterested. Nevertheless, to the best of the Debtors' knowledge, information and belief based on the Declaration, FTI does not have or represent any interest adverse to the Debtors' estates or any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in, parties in interest in these cases, or for any other reason. Additional information about FTI's connections to parties in interest in these cases is described in the Declaration.

### B. The Court Also May Grant the Requested Relief Pursuant to Section 105 of the Bankruptcy Code

29. Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Adelphia Communications Corp. v. The American Channel (In re Adelphia Communications Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

### Notice

30. The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (c) the Debtors' prepetition and postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

31. No prior motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) granting the relief sought herein and (b) granting such other and further relief as the Court may deem proper.

Dated: February 4, 2015

CACHÉ, INC., et al.

By: Anthony DiPippa
Its: Chief Financial Officer