IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CACHÉ, INC., *et al.*,[1] | Case No. 15-10172 (MFW) |
| Debtors. | (Jointly Administered) |
| | Objection Deadline: February 18, 2015 at 4:00 p.m.<br>Hearing Date: February 23, 2015 at 12:30 p.m.<br>Re: Docket Nos. 13 and 71 |

**OBJECTION BY WESTFIELD, LLC AND CERTAIN OF ITS AFFILIATES TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF**

Westfield, LLC, and certain of its affiliates that are landlords in these cases as set forth on **Schedule A** attached hereto (collectively, the "Westfield Landlords"), hereby submit this Objection (the "Objection") to Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief, dated February 4, 2015 (Docket No. 13, the "Sale Motion"), and in support thereof, state as follows:

I. **BACKGOUND**

1. On February 4, 2015 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

9939

2. The Westfield Landlords are the landlords and certain of the Debtors are the tenants pursuant to unexpired leases (the "Westfield Leases") of nonresidential real property for retail stores (the "Premises") located at shopping centers (the "Centers") around the country.

3. Each of the Centers constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3).

4. Pursuant to the Sale Motion, the Debtors seek approval of a Bidding Procedures Order for the purpose of establishing procedures for the possible assumption and assignment of certain of their real property leases, including the Westfield Leases, to one or more proposed assignees for the Debtors' leases (the "Proposed Assignees").

## II. OBJECTIONS

### A. The Debtors' Proposed Schedule for Assumption and Assignment of the Westfield Leases Should Not Be Adopted

#### (i) The Time Period Between the Identification of the Proposed Assignee and the Sale Hearing Is Unreasonably and Unnecessarily Short

5. In the Sale Motion, the Debtors ask the Court to adopt the following schedule with respect to the potential assumption and assignment of leases, including the Westfield Leases:

| | |
|---|---|
| **February 24, 2015 (Day 1):** | Bid Deadline |
| **February 26-27, 2015 (Days 3-4):** | Auction of leases and identification of Proposed Assignee, if any |
| **March 3, 2015 (Day 8):** | Sale Hearing – Deadline for landlords to file adequate assurance objections. Court to conduct evidentiary hearings on adequate assurance issues in all contested lease assignments |

6. Under these proposed procedures relating to potential assumption and assignment of leases, the important deadlines are unreasonably proposed to occur within a matter of business days, such that the Westfield Landlords would have to be prepared for a contested Sale Hearing

2

which would occur less than three business days after learning the identity of the Proposed Assignee of a Westfield Lease.

7. In the Sale Motion, the Debtors do not explain or offer sufficient justification as to why it is imperative that the Court adopt a schedule that could result in the Westfield Landlords being deprived of due process with respect to the assignment of one or more of their Westfield Leases. As the proposed Sale Hearing date is in March, and thus the Debtors will already be responsible for paying the Westfield Landlords March rent under the Westfield Leases that are not rejected by February 28, 2015, there should be no harm to the Debtors in pushing the Sale Hearing back – at least as to proposed lease assignments.

8. The timing issue has heightened importance considering the fact-intensive requirements of Bankruptcy Code section 365(b)(3)(A)-(D), and the procedural protections of the Bankruptcy Rules. The time between disclosure of the Proposed Assignee and the Sale Hearing should be extended to provide the Westfield Landlords with a reasonable period of time after such disclosure to determine whether the Proposed Assignee(s) can provide adequate assurance of future performance and to file a considered objection to the proposed assignment(s), as appropriate under the specific circumstances of each Lease and the (currently unknown) Proposed Assignee.

9. Accordingly, the Westfield Landlords ask this Court to establish a schedule that would permit them sufficient time to conduct discovery of the Proposed Assignee(s) and the Debtors regarding the Proposed Assignees' ability to provide adequate assurance of future performance under the Westfield Leases as required by Bankruptcy Code section 365(b)(3)(A)-(D).

    (ii)    **The Westfield Landlords Request an Evidentiary Hearing and the Establishment of a Discovery Schedule for Contested Lease Assignments in Accordance with the Federal Rules of Bankruptcy Procedure**

10. Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, the Sale Motion initiated a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an . . . unexpired lease, other than as part of a plan, is governed by Rule 9014").

11. Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

12. Additionally, pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure, the Court "shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses will testify." Fed. R. Bankr. P. 9014(e).

13. After disclosure of the Proposed Assignee(s), to the extent the Westfield Landlords cannot reach agreement with the Debtors and the Proposed Assignee(s) regarding a consensual assumption and assignment of any of the Westfield Leases, the Westfield Landlords may wish to take discovery of the Debtors and the relevant Proposed Assignee(s) regarding, *inter alia*, the current financial condition and operating performance of the Proposed Assignee(s), the intended use of each of the Premises, and the Debtors' financial condition at the time it entered into the relevant Westfield Leases, before an evidentiary hearing on any proposed assumption and assignment of any of the Westfield Leases.[2]

14. Accordingly, with respect to any non-consensual requests to assume and assign any Westfield Leases, the Westfield Landlords respectfully ask this Court to use the Sale Hearing as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on such contested assignments of Westfield Leases.

---

[2] 11 U.S.C. § 365(b)(3)(A)-(D).

(iii)    **The Cure Procedures Proposed by the Debtors Should Not be Adopted**

15.    Pursuant to Paragraph 10 of the proposed Bidding Procedures Order, the Debtors appear to seek a Cure procedures schedule in which (a) the Debtors serve the Cure Notice three business days after entry of the Bidding Procedures Order (presumably by February 26, 2015), and then (b) the Cure Objection deadline will have to be set on or before the proposed Sale Hearing Date of March 3, 2015, a mere three business days later.

16.    For the same reasons set forth above regarding adequate assurance objection timelines, the proposed Cure procedures schedule is too short and deprives the Westfield Landlords of due process, all without justification. The deadline to file Cure Objections should be no less than two weeks after receipt of the Cure Notice.

B.    **Specific Objections to the Proposed Store Closing Sale Guidelines**

17.    Pursuant to the Sale Motion, the Debtors seek, *inter alia*, entry of an order approving an Agency Agreement pursuant to which the Stalking Horse will conduct going-out-of-business or similarly themed store closing sales (the "Store Closing Sales") at the Premises that are subject to Westfield Leases. Although the Westfield Leases prohibit the Debtors from conducting the Store Closing Sales at the Premises, the Westfield Landlords understand that there is authority holding that lease clauses prohibiting Store Closing Sales are not strictly enforced because such clauses contravene the overall policy of the Bankruptcy Code requiring debtors to maximize the value available for distribution to creditors. *See, e.g., In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992).

18.    The same authorities that generally permit Store Closing Sales, however, also provide that, consistent with the Bankruptcy Code, reasonable time, place and manner restrictions may be imposed on Store Closing Sales.

> [Not enforcing an anti-GOB Sale clause in a lease] is not to say the Code abrogates all lease provisions and statutes conditioning GOB Sales. Section 363(e) reserves for bankruptcy courts the discretion to condition the time, place and manner of GOB sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations.

*Ames*, 136 B.R. at 359. Thus, the Court should balance the Debtors' obligation to maximize value to the estate and the Westfield Landlords' need to preserve the image of quality and prosperity at the Centers.[3]

19. The Debtors have submitted generally acceptable proposed Sale Guidelines, including Exhibit 8.1 to the Agency Agreement and several provisions within the text of the Agency Agreement itself, that are to be binding upon the Westfield Landlords and the Stalking Horse liquidation agent (the "Agent") conducting the Store Closing Sales at the Premises. However, in view of 11 U.S.C. § 363(e), at a minimum, the Store Closing Sales should be subject to somewhat more restrictive Court-ordered Store Closing Sales guidelines which would (in addition to the restrictions in the Debtors' proposed Sale Guidelines) more evenly balance the Debtors' obligation to maximize value to the estates and the Westfield Landlords' need to preserve the image of quality and prosperity at the Centers (the "Modified Sore Closing Guidelines"):

    a.    Limit the Agent to a reasonable number and size of signs in the Store as follows: signs shall be limited to the lesser of four window signs or one per window, each of which shall not exceed 48 inches by 36 inches and shall be at least twelve inches inside the glass storefront windows; in

---

[3] In the Sale Motion, the Debtors request that the Court "invalidate" lease provisions that restrict the Debtors' ability to conduct the Store Closing Sales. *See* Sale Motion at ¶ 67. This request is too broad. Any Court order authorizing the Debtors or their agent to conduct Store Closing Sales should simply authorize the Store Closing Sales notwithstanding such restrictions in the Westfield Leases, as opposed to "invalidating" those provisions.

        addition to window signs, no more than five hanging signs for each 1,000 square feet of leased space shall be posted in the interior of a store, each sign not to exceed 37 inches by 26 inches; "toppers", if any, shall not exceed 7½ inches by 11 inches, shall be of the same color(s) as the other signs, and shall be limited to one for each rack, counter or shelf. No interior or exterior banners shall be permitted at the Center. No "Popsicle Stick" signs, A-frame signs or anything similar shall be used anywhere on Center property.

b.    Require the Agent to abide by the Center's hours (both opening and closing times).

c.    Prohibit advertising and/or signage from containing the terms "going out of business sale," "GOB", "bankruptcy sale," "Chapter 11 sale," "lost lease," "court ordered sale," "liquidation sale," or "total liquidation sale."

d.    Prohibit the distribution of handbills, leaflets and other written materials outside of the Store and on Center property.

e.    Prohibit sign walkers on Center property.

f.    Prohibit augmentation of the Debtors' inventory.

g.    To the extent that a Westfield Landlord believes that the Agent is conducting a Store Closing Sale in violation of the Modified Store Closing Guidelines (an "Alleged Violation"), the Westfield Landlord should have to provide not more than 24 hours' notice to the Debtors and the Agent, subject to the Court's calendar, before an expedited hearing is held on the Alleged Violation. Furthermore, the Westfield Landlord should be permitted to exercise peaceable self-help in advance of a Court order with

respect to obvious violations of the Modified Store Closing Guidelines (such as preventing sign walkers from being utilized on Center property by having local police enforce trespassing and safety laws and removing any signs that may be placed in the parking fields or other common areas of the Center) pending a ruling by the Court.

h. The Modified Store Closing Guidelines should apply regardless of whether the specific conduct is restricted under the Westfield Lease. Additionally, compliance with the Modified Store Closing Guidelines should not be excused based on alleged "customary practices" at the Premises or Center.

i. Condition the Store Closing Sales upon the Debtors' prompt compliance with its ongoing rental and other obligations under the Westfield Leases in accordance with §365(d)(3) of the Bankruptcy Code.

j. The Store Closing Sales shall end by April 30, 2014.

k. The Agent shall be liable for any damage to, or abandoned trash or debris at, the Premises.

C. **Joinder in Other Landlord Objections**

20. The Westfield Landlords join in the objections of other landlords to the extent not inconsistent with the objections raised herein.

WHEREFORE, the Westfield Landlords respectfully request that this Court enter an order:

a. Sustaining this Objection;

b. Denying the Debtors' request to assume and assign to, as of yet, unknown Proposed Assignee(s), the Westfield Leases unless the Debtors and the

Proposed Assignee(s) meet all requirements under the Bankruptcy Code in accordance with this Objection;

c. Establishing a fair and appropriate discovery and evidentiary hearing schedule in connection with any non-consensual request to assume and assign any of the Westfield Leases;

d. Requiring changes to the proposed procedures for assumption and assignment of the Westfield Lease, including without limitation, Cures, consistent with the specific requests set forth herein;

e. Adopting its requested modifications to the Debtors' proposed Sale Guidelines; and

f. Granting the Westfield Landlords such other and further relief as the Court deems appropriate.

Dated: February 18, 2015

                SEITZ, VAN OGTROP & GREEN, P.A.

                /s/ Kevin A. Guerke
                Kevin A. Guerke (4096)
                222 Delaware Avenue, Suite 1500
                P.O. Box 68
                Wilmington, DE  19801
                (302) 888-0600

                and

                Niclas A. Ferland, Esq.
                Ilan Markus, Esq.
                LeClairRyan, a Professional Corporation
                545 Long Wharf Drive, 9th Floor
                New Haven, CT  06511
                (203) 672-3211
                niclas.ferland@leclairryan.com
                ilan.markus@leclairryan.com

                Counsel to: Westfield, LLC and certain of its
                affiliates as set forth on <u>Schedule A</u> attached hereto