IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| Caché, Inc., *et al.*, | : | Case No. 15-10172 (MFW) |
| | : | |
| Debtors. | : | **Hearing Date: 2/23/15 at 12:30 p.m.** |
| | : | **Obj. Deadline: 2/19/15 (Extended by Agreement)** |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ORDERS (I) (A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF (D.I. 13)**

In support of his limited objection (the "Objection") to the Debtors' Motion for Orders (I) (A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale Of Assets and (B) Store Closing Sales and (III) Granting Related Relief (the "Motion"), Andrew R. Vara, Acting United States Trustee for Region 3 (" U. S. Trustee"), by and through his undersigned counsel, states as follows:

**BACKGROUND**

1.  This Court has jurisdiction to hear this Limited Objection.

2.  Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),*

898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

3.  Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to this Limited Objection.

4.  The Debtors filed their Chapter 11 petition on February 4, 2015. The Debtors cited, among other things, unsuccessful expansion efforts and product line changes to lower margin casual sportswear, which in a weak environment for specialty retailers, contributed to only approximately 50% of its stores generating positive cash flow. The Debtors have not yet filed their schedules or made any other financial disclosures related to their assets since filing a 10-Q for the quarter ending September 27, 2014. The First Day Papers contained no disclosure about the value of the Debtors' assets beyond cash and inventory as of that earlier date.

5.  The U.S. Trustee appointed an official committee of unsecured creditors ("Committee") on February 13, 2015.

6.  On February 4, 2015, the Debtors filed the Motion, seeking (a) authority to enter into an agency agreement with a joint venture of SB Capital Group, LLC and Tiger Capital Group, LLC, as stalking horse bidder (the "Stalking Horse"), to conduct store closing sales (the "Agents"), (b) authority to grant the bidding protections set forth in the proposed agency agreement, (c) approval of bidding procedures and related auction for the sale of (i) inventory, (ii) fixtures, furniture, and equipment ("FF&E"), (iii) intellectual property, (iv) accounts receivable and cash on hand in the stores and other closing locations, (v) real property leases, and (vi) customer lists (each, an "Asset Class" and collectively, the "Assets").

7.  Although the Debtors hold out the possibility of a going concern sale, the primary focus of the Motion is Store Closing Sales to be conducted by the Agents, followed by liquidation. As described in the Motion and the agency agreement annexed thereto, it appears that the Store Closing Sales would dispose only of inventory and FF&E, with the remaining

assets to be liquidated directly by the Debtors without assistance from the Agents.

**Limited Objection To Bidding Protections**

8.     The Motion seeks approval of bidding protections in favor of the proposed stalking horse bidder in the event it is not the successful bidder at the proposed sale hearing, comprising a Break-Up Fee in the amount of $225,000, an expense reimbursement of up to $100,000 to cover certain reasonable out-of-pocket costs and expenses, "Signage Costs" in an amount not to exceed $325,000 to be reimbursed by the successful bidder on account of the Stalking Horse's actual out-of-pocket costs of signage, and reimbursement of "Purchase Order Obligations" (subject to valid identification of such property) with an aggregate actual cost not exceeding $375,000 (collectively with the Signage Costs, the "Bid Reimbursements" and together with the reasonable out-of-pocket costs and expense the "Expense Reimbursement"). The Stalking Horse will look to the successful bidder for payment and satisfaction of the Bid Reimbursements.  *See* Agency Agreement Section 16.11 (attached to the Motion).

9.     Although a stalking horse bidder may be entitled in certain circumstances to be paid a break-up fee and expense reimbursement in connection with due diligence costs in the event it is not the successful bidder, the Motion does not set forth any basis requiring a successful bidder to pay the stalking horse's out-of-pocket costs for signage and supplemental items.  Indeed, it appears that the Stalking Horse in this case desires to give itself a head start on performing under the agency agreement before it is actually approved by the court, and then to foist the cost of any aborted performance on the successful bidder if the Stalking Horse is not the successful bidder.

10.     Requiring a successful bidder to reimburse the Stalking Horse for costs the Stalking Horse incurs working on speculation by starting to perform before a contract is awarded

does not preserve or enhance the value of the assets of the estate, nor does it otherwise benefit the estate. On the contrary, doing so harms the estate by chilling the bidding. If the Stalking Horse does not wish to absorb costs it incurs by working on speculation, it should defer incurring those costs until it is actually awarded a contract to liquidate the Debtors' inventory and FF&E.

WHEREFORE, the U.S. Trustee requests that this Court issue an order conditioning approval of the Motion on appropriate modifications, and granting such other and further relief as the court deems just and proper.

Respectfully submitted,

ANDREW R. VARA
ACTING UNITED STATES TRUSTEE

Dated: February 19, 2015    BY:  /s/ Timothy J. Fox
    Timothy J. Fox, Jr.
    Trial Attorney
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)