IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------

In re:

CACHÉ, INC., *et al.*,[1]

                              Debtors.

-----------------------------------------------------------------

Chapter 11
(Jointly Administered)

Case No. 15-10172 (MFW)

**Obj. Deadline: Feb. 19, 2015 (extended)**
**Hearing Date: Feb. 23, 2015 at 12:30 p.m. ET**
**Docket Ref. Nos. 13, 14, 63, & 71**

**LIMITED OBJECTION OF SLTS GRAND AVENUE II, L.P.; CROSSGATES MALL
GENERAL COMPANY NEWCO, LLC; DESTINY USA HOLDINGS, LLC; AND
PYRAMID WALDEN COMPANY, L.P. TO DEBTORS' MOTION FOR ORDERS (I)(A)
AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING
PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D)
SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II)
AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES
AND (III) GRANTING RELATED RELIEF**

SLTS Grand Avenue II, L.P.; Crossgates Mall General Company NewCo, LLC; Destiny

USA Holdings, LLC;[2] and Pyramid Walden Company, L.P. (collectively the "Landlords"), by

and through their attorneys, Menter, Rudin & Trivelpiece, P.C. and Ballard Spahr, LLP, bring

this limited objection (the "Limited Objection") to that portion of *Debtors' Motion for Orders*

*(i)(a) Authorizing Entry into Agency Agreement, (b) Authorizing Bidding Protections, (c)*

*Authorizing Bidding Procedures and Auction and (d) Scheduling Sale Hearing and Approving*

*Notice Thereof; (ii) Authorizing (a) Sale of Assets and (b) Store Closing Sales and (iii) Granting*

---

[1] The Debtors with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

[2] Destiny USA Holdings, LLC has been identified as a landlord whose lease (the "Destiny Lease") may be rejected pursuant to the Debtors' *Second Omnibus Motion for Entry of an Order Authorizing the Debtors (a) to Reject Certain Unexpired Non-Residential Real Property Leases Pursuant to 11 U.S.C. § 365, Effective Nunc Pro Tunc to Earlier of the Turnover Date and February 28, 2015, (b) Authorizing the Debtors to Abandon Any Remaining Personal Property Located at the Leased Premises, and (c) Fixing a Bar Date for Claims of Counterparties* (the "Second Rejection Motion"). (Dkt. No. 118.) The Second Rejection Motion provides, however, that the Destiny Lease may be removed from the list of leases subject to rejection. (Rejection Motion, ¶ 9.) Therefore, Destiny USA Holdings, LLC joins in this objection to the extent it is subject to the Motion.

*Related Relief* (the "Motion") that seeks to establish Bidding Procedures, as that term is hereinafter defined. (Dkt. No. 13.)

<u>JURISDICTION</u>

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

<u>BACKGROUND</u>

2.     On February 4, 2015 (the "Petition Date"), the above captioned debtors (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[3] with the Court.

3.     Upon information and belief, the Debtors are operating their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4.     The Landlords and one of the Debtors are parties to unexpired leases of nonresidential real property pursuant to written leases (collectively the "Leases") of premises (collectively the "Premises") at the following locations:

| Landlords | Shopping Center | Location |
|---|---|---|
| SLTS Grand Avenue II, L.P. | Southlake Town Square Grand Avenue (Phase 5) | Southlake, Texas |
| Crossgates Mall General Company NewCo, LLC | Crossgates Mall | Albany, New York |
| Destiny USA Holdings, LLC | Destiny USA | Syracuse, New York |
| Pyramid Walden Company, L.P. | Walden Galleria | Buffalo, New York |

5.     The Premises are located within "shopping centers" as the term is used in § 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

---

[3] All statutory references hereinafter are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, unless otherwise indicated.

6.    The Motion proposes conducting an auction (the "Auction") of substantially all of the Debtors' assets, including real property leases.  (Motion, ¶ 5.)  The Debtors have entered into an agency agreement (the "Agency Agreement") with SB Capital Group, LLC and Tiger Capital Group, LLC (collectively the "Stalking Horse") to conduct store closing sales at between 148 and 163 of the Debtors' retail locations.  (Motion ¶ 8.)  The Agency Agreement is to serve as the stalking horse bid and be subject higher or better bids at the Auction, including a going concern sale offer for the Debtors' assets.  (*Id.*)

7.    The Debtors' proposed timeline is very compressed:

- February 23, 2015 – Hearing on Bidding Procedures portion of Motion;

- February 24, 2015 – Deadline to submit bids;

- February 26, 2015 – Auction;

- Whitin three (3) days of entry of the procedures order – Notices of cure amounts filed and served;

- March 3, 2015 – Hearing to approve sale (the "Sale Hearing");

- March 4, 2015 – Closing date per Agency Agreement.

The deadline to object to proposed cure amounts or lease assumption and assignment is not specified in the Motion or its supporting documents.  (Bidding Procedures Order, ¶ 10.)  The proposed deadline for objections to assumption and assignment on the basis of adequate assurance of future performance is at or prior to the Sale hearing.  (Bidding Procedures Order, ¶ 13.)

8.    The Motion, Bidding Procedures, and Bidding Procedures Order deprive the Landlords of their due process rights and their rights under § 365 of the Bankruptcy Code and the Leases.

<u>**LIMITED OBJECTION**</u>

**I.    *Adequate Assurance of Future Performance***

9.        Section 365 of the Bankruptcy Code controls the assumption and assignment of nonresidential real property leases, and requires, *inter alia*, that a debtor provide adequate assurance that a proposed assignee has the ability to perform under such lease as a condition to assuming and assigning the lease.  11 U.S.C. §§ 365(b)(1)(C) & (f)(2).  The debtor bears the ultimate burden of persuasion as to issues under 11 U.S.C. § 365.  *See In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985).  Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under Section 365(b), including sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee.  *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); *In re Belize Airways*, 5 B.R. 152 (Bankr. S.D. Fla. 1980).  Courts also look to the operating experience of the proposed assignee. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

10.        Furthermore, where the lease involved is a shopping center lease, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the lease under Section 365(b)(1)(C).  *In re Arden and Howe Associates, Ltd.,* 152 B.R. 971, 976 (Bankr. E.D. Cal. 1993).  Such heightened adequate assurance requirements include assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).  The Debtors must satisfy the foregoing adequate assurance requirements prior to assumption and assignment of the Leases.

11.    The Bidding Procedures provide that potential bidders must provide:

Adequate assurance information, including (a) adequate information (in the Debtors' reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed transaction . . .

(Motion, ¶ 22; Bidding Procedures, ¶ 1(b).)  While the foregoing is a start,[4] bidders should be required to provide tax returns for the last two years, financial statements for the last two years, including current financial statements; current bank account statements and:

(a) Information regarding retail operating history;
(b) Proposed use of the Premises (which must be in accordance with the terms of the Leases);
(c) Cash flow projections for next two years; and
(d) Information regarding management.

This information is necessary in assessing whether a proposed assignee is capable of performing pursuant to the terms of an assumed lease.

12.    Moreover, the Motion and its supporting documentation do not indicate when such adequate assurance of future performance information will be provided to the Landlords, or even that it will be provided.  (Motion, ¶ 95.)  All bids with adequate assurance information

---

[4] It should be noted, however, that the provision of adequate assurance information is not specifically enumerated as being a requirement of a "Qualified Bid."  (Bidding Procedures, ¶ 3.)

should be delivered to the Landlords upon the Debtors' receipt. The proposed deadline to submit bids of February 24, 2015 and Sale Hearing on March 3, 2015 (just 7 days later), will not allow the Landlords sufficient time to assess adequate assurance of future performance information, conduct discovery, and object if appropriate. This lack of adequate notice violates the Landlords' due process rights. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that due process requires that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and afford them an opportunity to present objections."). Thus, the Court should order that any hearing on lease assumption and assignments should occur at least ten (10) days after the Sale Hearing with objections due on the day of the hearing with regard to assumption and assignment.

13.    The Debtors should also be required to file notice of the results of the Auction along with the Debtors' agreements with any successful bidder(s) or next best bidder(s) no later than one day following the conclusion of the Auction.

14.    Additionally, the Court should order that any proposed assignee shall submit to expedited discovery in connection with a proposed lease assumption and assignment. The Landlords are entitled to such discovery pursuant to Federal Rules of Bankruptcy Procedure 6006(a) and 9014.

## II.    *Cure Procedures*

15.    The Motion provides that "[t]he Counterparties will have sufficient opportunity to file an objection to the proposed cure costs (the "Cure Costs") set forth in the Cure Notice," but does not indicate what that time period will be. (Motion, 94.) The Landlord should have at least ten (10) days to object to proposed cure amounts after receipt of the Cure Notice, as that term is defined in the Motion, but if the Debtors do not propose to assume and assign the Leases as set

forth in the notice of auction results, a cure objection with regard to the Leases is not necessary and should not be required.

16.    The Motion provides that:

> Except to the extent otherwise provided in the agreement(s) entered into with the Successful Bidder(s), subject to the payment of any Cure Costs, the assignee of any Assumed Contracts will not be subject to any liability to the assigned contract or lease counterparty that accrued or arose before the closing date of the sale of the Assets and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

(Motion, ¶ 89.)  This relief violates the Landlords' rights to adequate assurance of future performance, as any proposed assignee of the Leases must be liable for accrued obligations which have not been billed or have not come due under the Leases.  Such obligations include adjustments and reconciliations relative to periods before any assignment of the Leases.  In addition, any assignee of the Leases must assume all obligations to indemnify and hold the Landlords harmless for events occurring prior to any assumption and assignment.  This result is mandated by the requirement that the Debtors provide adequate assurance of future performance under the Lease.  *See* 11 U.S.C. §§ 365(b)(1)(A), (B) and 365(f)(2).  Claims for indemnity may include, but are not limited to, (i) claims for personal injuries which occur at the Premises, where the Landlords are joined as party defendants, (ii) damage and destruction to the property by Debtors or their agents, and (iii) claims for environmental damage or environmental cleanup. The Court should order that any proposed assignee shall be liable for the foregoing amounts notwithstanding anything to the contrary in the Motion, Agency Agreement, or any other agreement or pleading entered into by the Debtors and any successful bidder(s) or next best bidder(s).

### III.    Approval of the Agency Agreement is Inappropriate at this Time

17.    The Bidding Procedures Order provides that

[t]he Debtors are authorized to enter into the Agency Agreement and all of its terms (including the Bidding Protections and the Transaction with the Stalking Horse, the Bidding Procedures, Auction Notice, setting the time, date and place of the Sale Hearing, are hereby APPROVED, and fully incorporated into this Order, and shall apply with respect to the proposed Sale.

(Bidding Procedures Order, ¶ 2.)  Approval of the Agency Agreement, including the proposed sale guidelines is premature, and this provision should be revised accordingly.

### IV.    List of Stores Excluded from Agency Agreement

18. The Agency Agreement provides that:

[p]rior to the earlier of (i) February 27, 2015 and (ii) the Sale Commencement Date, Merchant shall close at least a minimum of fifty-five (55) and no more than a maximum of seventy (70) of the retail store locations that are currently operated by the Merchant in the ordinary course (the "Excluded Stores") as set forth on a schedule (the "Excluded Store Schedule") delivered by Merchant to Agent within five (5) days after the date of this Agreement.

(Agency Agreement, § 8.10.)  The Agency Agreement is dated February 4, 2015 and, thus, the deadline for the Debtors to deliver the list of Excluded Stores was February 9, 2015.  The Agency Agreement also provides that the Excluded Stores shall not be included in the stores where the Agent may conduct store closing sales.  (*Id.*)  The Landlords have requested a copy of this list, but have not received it.[5]  The Debtors should file this list so as to provide notice of those stores where no sales are to be conducted.

### V.    Payment of Post-Petition Stub Rent

19.    Finally, the Debtors have failed to pay the Landlords' post-petition stub rent from the time period from the Petition Date to the present (the "Stub Rent").  The Third Circuit Court of Appeals has held that the debtor-lessee may be obligated to pay post-petition sub rent pursuant

---

[5] The Excluded Store Schedule may be included in the list of leases to be rejected pursuant to the Second Rejection Motion.

to § 503(b)(1). *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 816-818 (3d Cir. Del. 2010) ("When a debtor occupies post-petition non-residential space it leases, that § 365(d)(3) provides when the rent obligation arises does not erase when lessors may make § 503(b)(1) claims for the value conferred post-petition by that occupancy. We thus conclude that the Landlords may assert a § 503(b)(1) claim for 'stub rent.'").

20.     The Debtors are operating their stores at the Premises and reaping post-petition sales proceeds for the benefit of their lender at the expense of the Landlords. The Landlords are therefore entitled to the payment of the Stub Rent as it constitutes an actual and necessary cost of preserving, and even enlarging, the Debtors' bankruptcy estate.

21.     Furthermore, it is not sufficient to simply allow the Landlords an administrative expense claim on account of the Stub Rent. Instead, the Court should order immediate cash payment of the same in the form of adequate protection. *See* 11 U.S.C. § 361. When an estate, such as the one in this case, may be administratively insolvent, the Court may provide the Landlords with adequate protection pursuant to § 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e); *see also In re Goody's Family Clothing, Inc.*, 610 F.3d at 819. In this circumstance the Court should order that adequate protection take the form of immediate cash payments for post-petition use and occupancy of the Premises. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002). These cases may be administratively insolvent and allowing the Landlords' administrative expense claim on account of the Stub Rent without requiring immediate payment will not adequately protect the Landlords for the continued use of

the Premises.  Moreover, the Court should require the payment of the Stub Rent pursuant to §
506(c) of the Bankruptcy Code, as the Landlords would otherwise be involuntarily incurring the
expense of preserving the collateral of the Debtors' lender.  *See In re Visual Ind., Inc.*, 57 F.3d
321, 325 (3d Cir. 1995).  Thus, the Court should order the immediate payment of the Stub Rent
pursuant to §§ 361, 363(e), and 506(c).

### JOINDER

22.     The Landlords join in the objections of other landlords to the extent they are not
inconsistent with the relief sought in this Limited Objection.

### RESERVATION OF RIGHTS

23.     The Landlords reserve their rights to supplement this Limited Objection and make
such other and further objections as they deem necessary or appropriate and reserve all rights to
object to, among other things, any liquidation sale of the Debtors' assets, assumption and
assignment of the Leases, and cure amounts due under the Leases.

### CONCLUSION

**WHEREFORE**, the Landlords respectfully request that the Court deny the relief requested
in the Motion or enter an Order granting relief consistent with the foregoing and any further
relief the Court may deem just and proper.

Dated:  February 19, 2015                /s/ Leslie C. Heilman
Wilmington, Delaware                    Leslie C. Heilman (No. 4716)
                                        **BALLARD SPAHR, LLP**
                                        919 N. Market Street, 11th Floor
                                        Wilmington, DE 19801
                                        Telephone:  (302) 252-4465
                                        Facsimile:  (302) 252-4466
                                        E-mail:  heilmanl@ballardspahr.com

                                        -AND-

Kevin M. Newman
Adam F. Kinney
**MENTER, RUDIN & TRIVELPIECE, P.C.**
308 Maltbie Street, Suite 200
Syracuse, New York 13204-1439
Telephone:     (315) 474-7541
Facsimile:     (315) 474-4040

*Attorneys for SLTS Grand Avenue II, L.P.; Crossgates
Mall General Company NewCo, LLC; Destiny USA
Holdings, LLC; and Pyramid Walden Company, L.P.*