IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re. Docket No. 13 |

**ORDER (I) (A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT,
(B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING
PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND
APPROVING NOTICE THEREOF AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "**Debtors**"), for an order (this "**Order**") (a) authorizing

entry into Agency Agreement, (b) authorizing Break-Up Fee, Cash Expense Reimbursement,

Signage Costs Obligations and Purchase Order Obligations for the Stalking Horse,

(c) authorizing proposed auction procedures (the "**Bidding Procedures**") and setting the time,

date and place of the auction (the "**Auction**") and (d) approving the form of notice of the

Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (ii) setting a hearing

(the "**Sale Hearing**"), to be held on March 3, 2015, to consider the entry of the Approval Order

all as more fully set forth in the Motion; and upon the *Declaration of Anthony DiPippa in*

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement.

DOCS_DE:197868.2 11903/001

*Support of First Day Motions* and the *Declaration of Daniel Shea in Support of the Debtors'*

*Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding*

*Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing*

*and Approving Notice Thereof, (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales*

*and (III) Granting Related Relief*, and it appearing that this Court has jurisdiction to consider the

Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

from the United States District Court for the District of Delaware dated as of February 29, 2012;

and it appearing that venue of these chapter 11 cases and the Motion in this District is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157

and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

DOCS_DE:197868.2 11903/001

28 U.S.C. § 158(a) with respect to the Bidding Procedures, the Auction Notice and the Cure

Notice and the approval of the Debtors' entry into the Agency Agreement.

> C.     Good and sufficient notice of the Bidding Procedures and other related

relief sought pursuant to the Motion has been given to all interested persons and entities,

including, without limitation, (a) all parties provided with notice of the Motion; (b) all parties

identified by the Debtors' advisors as known or reasonably believed to have expressed an interest

in the Assets; (c) all potential assigned contract counterparties; (d) all parties who are known to

possess or assert any lien, claim, interest or encumbrance in or upon any of the Assets; (e) all

applicable federal, state, and local taxing authorities having jurisdiction over any Store or any of

the Assets, including, without limitation, the Internal Revenue Service; (f) the United States

Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 Attn: David L. Buchbinder,

Esq.; (g) counsel to Salus Capital Partners, LLC, as lender under the Debtors' postpetition debtor

in possession financing agreement (the "DIP Lender") and the prepetition lenders (together with

the DIP Lender, the "Secured Lenders"), Choate Hall & Stewart, Two International Place,

Boston, MA 02110, Attn: John F. Ventola, and DiConza Traurig Kadish, LLP, 630 Third

Avenue – 7th Floor, New York, NY 10017, Attn: Maura I. Russell, Esq.; (h) the Office of the

United States Attorney for the District of Delaware, 844 King Street, Suite 2207, Wilmington,

Delaware 19801 Attn: David L. Buchbinder, Esq.; (i) counsel to the Official Committee of

Unsecured Creditors (the "Creditors' Committee"); (j) all lessors of leases for the Stores; (k) all

governmental entities known by the Debtors to have an interest in regulating the Sale; (l) the

state attorney general in each state in which the Debtors operate a Store; and (m) all entities on the general case service list.

D.     Any remaining objections to the Motion with respect to the relief granted in this Order, or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

E.     The Debtors have articulated good and sufficient reasons for, and the best interests of the Debtors will be served by, this Court granting the preliminary relief requested in the Motion.

F.     The form of the Agency Agreement is appropriate and reasonably calculated under the circumstances to enable the Debtors and other parties-in-interest to easily compare and contrast the differing terms of the bids presented at the Auction.

G.     The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate under the circumstances and are designed to maximize the Debtors' recovery with respect to the sale of the Assets, including sale of the Merchandise and Owned FF&E through the Store Closing Sales or to a Successful Bidder proposing an Alternative Transaction, including a going concern sale.

H.     The Debtors' proposed Auction Notice, substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated under the circumstances to provide all interested parties with timely and proper notice of the Bidding Procedures, the related Auction (if necessary), the Sale Hearing, and any and all objection deadlines and no other or further notice is required.

I.      The proposed notice substantially in the form attached hereto as Exhibit 3

to be served on counterparties to Assumed Contracts ("**Cure Notice**") is reasonably calculated to

provide adequate notice concerning the proposed sale of the Assets and any proposed assumption

and assignment of Assumed Contracts and will provide due and adequate notice of the relief

sought in the Motion.

J.      Under the circumstances, timing and procedures set forth herein, in the

Motion and in the Agency Agreement, the Debtors have demonstrated compelling and sound

business justifications for entry into the Agency Agreement and its terms, including, without

limitation, the Break-Up Fee, the Cash Expense Reimbursement, the Signage Costs Obligations

and the Purchase Order Obligations as provided in Section 16 of the Agency Agreement

(collectively, the "**Bidding Protections**").

K.      The Bidding Protections: (a) were negotiated by the Debtors and the

Stalking Horse in good faith and at arm's-length, (b) are fair, reasonable and appropriate under

the circumstances given, among other things, the size and nature of the transaction and the

efforts that have been expended and will continue to be expended by the Stalking Horse,

notwithstanding that the proposed sale is subject to higher or better offers, and the substantial

benefits the Stalking Horse has provided to the Debtors, their estates and creditors and all parties

in interest herein, including, among other things, by increasing the likelihood that the best

possible price for the Assets will be received, (c) are an actual and necessary cost and expense of

preserving the Debtors' estates and (d) are a reasonable inducement for, and a condition of, the

Stalking Horse's offer to serve as the Debtors' exclusive agent to conduct the Transaction on the

5

terms set forth in the Agency Agreement and compensation for the risks and lost opportunity costs incurred by the Stalking Horse. The Bidding Protections are commensurate with the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse and constitute actual and necessary costs and expenses incurred by the Debtors in preserving the value of their estates within the meaning of section 503(b) of the Bankruptcy Code.

L.      Entry into the Agency Agreement with the Stalking Horse is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest and, based on the information set forth in the Motion and presented to the Court, is an appropriate exercise of the Debtors' business judgment. The Agency Agreement will enable the Debtors to secure an adequate consideration floor for the Auction and will provide a clear benefit to the Debtors' estates and all other parties-in-interest.

M.      The Transaction does not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

N.      No other or further notice shall be required. No finding or ruling is made in this Bidding Procedures Order as to the adequacy of any proposed transaction, it being intended that such approval will be sought at the Sale Hearing.

O.      No person or entity, other than the Stalking Horse, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

**IT IS HEREBY ORDERED THAT:**

1.      The procedural relief requested in the Motion is GRANTED to the extent set forth herein.

6

2.      The Debtors are authorized to enter into the Agency Agreement and the

Bidding Protections, the Bidding Procedures and Auction Notice are hereby APPROVED, and

are fully incorporated into this Order and shall apply with respect to the proposed Sale; provided

that the authorization of the Debtors to conduct the Sale shall be subject to the entry of the

Approval Order.  The Debtors are authorized to take any and all actions necessary or appropriate

to implement the foregoing.

3.      The Bidding Procedures attached hereto as Exhibit 1 are approved.  The

Debtors are hereby authorized to conduct an auction of the Assets pursuant to the Bidding

Procedures and this Order.  The Debtors are authorized to take any and all actions necessary or

appropriate to implement the Bidding Procedures.

4.      The Stalking Horse shall be deemed a Qualified Bidder pursuant to the

Bidding Procedures for all purposes with respect to the Merchandise and Owned FF&E and shall

be permitted to participate and bid for the Merchandise and Owned FF&E at the Auction.

5.      The Bidding Procedures shall apply to the Qualified Bidders and the

conduct of the sale of the Assets and the Auction.

6.      The Bidding Protections as set forth in Section 16 of the Agency

Agreement are hereby approved; provided, however, that (i) the aggregate amount of Signage

Costs Obligations shall not exceed $100,000, (ii) the phrase "February 24, 2015" in Section

16.11(a)(4)(A)(I) shall be replaced with the phrase "3:00 p.m. (Eastern Standard Time) on

February 27, 2015" and (iii) to the extent that the Bidding Protections become due and payable

to the Stalking Horse, the Office of the United States Trustee and the Creditors' Committee shall

7

be entitled, at its request, to reasonable evidence supporting amounts claimed by the Stalking

Horse as a part of the Cash Expense Reimbursement, the Signage Costs Obligations or the

Purchase Order Obligations; provided further that any such evidence provided to the Office of

the United States Trustee and Creditors' Committee may be redacted to delete any information

subject to the attorney-client privilege, any information constituting attorney work product, or

any other confidential, proprietary or commercially sensitive information.    The Bidding

Protections shall have administrative expense claim status pursuant to section 507 of the

Bankruptcy Code and shall be secured by a lien (which shall be deemed properly perfected

without the need for further filings or documentation) on the Agent Collateral and any Deposit

(each as defined in the Agency Agreement) in accordance with the terms of (and with the priority

set forth in) Section 16.11(d) of the Agency Agreement.

7.    The Auction Notice, substantially in the form attached hereto as <u>Exhibit 2</u>,

shall be deemed good and sufficient notice of the Bidding Procedures and any related Auction,

the Sale Hearing and the associated objection periods, and is reasonably calculated to provide

notice to any affected party and afford the affected party the opportunity to exercise any rights

affected by the Motion as it relates to the Auction and Sale Hearing.

8.    The Cure Notice, substantially in the form attached hereto as <u>Exhibit 3</u> to

be served on counterparties to Assumed Contracts ("**Cure Notice**") is reasonably calculated to

provide adequate notice concerning the proposed sale of the Assets and any proposed assumption

and assignment of Assumed Contracts and will provide due and adequate notice of the relief

sought in the Motion.

9. Within one (1) business day after entry of this Order, to the extent the Debtors determine in their discretion that providing such notice is in the best interests of their estates, the Debtors (or their agent) shall serve the Auction Notice upon all Notice Parties.

10. Within one (1) business day after entry of this Order, the Debtors shall file and serve the Cure Notice to the counterparties to any Assumed Contracts. Counterparties to the Assumed Contracts[4] (each a "**Counterparty**," and together, the "**Counterparties**"), subject to any Counterparty's right to object to adequate assurance for future performance under section 365 of the Bankruptcy Code, at or prior to the Sale Hearing, must file and serve any objection to the assumption and assignment of any Assumed Contract, including objections to any Cure Cost, so that such objections are received by **March 2, 2015 at 12:00 p.m. (Eastern Standard Time)**.

11. In the event that an objection to any Cure Cost is timely filed by a Counterparty, such Counterparty's objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the Cure Cost, and (iii) appropriate documentation in support of the alleged alternative Cure Cost. In the event that the Debtors and the Counterparty cannot consensually resolve the Counterparty's objection to the Cure Cost, the Successful Bidder or any other assignee will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

12. Any Counterparty failing to timely file an objection to the Cure Cost set forth in the Cure Notice shall be forever barred from objecting to the Cure Costs and from

---

[4] The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as an Assumed Contract.

9

DOCS_DE:197868.2 11903/001

asserting any additional cure or other amounts against the Debtors, their estates, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty.  For the avoidance of doubt, no executory contract or unexpired lease will be assumed or assumed and assigned until and unless a transaction closes that proposes assumption and assignment of such executory contract and/or unexpired lease.

13.    Any objection based upon adequate assurance of future performance under section 365 of the Bankruptcy Code may be filed at or prior to the Sale Hearing.

14.    All other objections to approval of the Transaction, including the Sale of the Assets free and clear of liens, claims and encumbrances and the Approval Order must be in writing, state the basis of such objection with specificity and be filed with this Court in compliance with the Bankruptcy Rules and the Local Rules and served so as to be received by the Bid and Objection Notice Parties (as such term is defined in the "Auction Notice" attached hereto as Exhibit "2") on or before **12:00 p.m. (Eastern Standard Time) on March 2, 2015**.

15.    Except as otherwise provided in the Agency Agreement, the Bidding Procedures or this Order, the Debtors may, as they may reasonably determine to be in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest:  (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the Successful Bid; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors or their estates; (d) remove any material Assets from the Auction; (e) waive terms and conditions set forth herein with respect to all

10

potential bidders; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) adjourn or cancel the Auction and/or Sale Hearing in open Court without further notice; (i) modify the Bidding Procedures or (j) withdraw the Motion at any time with or without prejudice.  Solely with respect to bids to acquire the Assets subject to the Agency Agreement, the Debtors may not waive without the consent of the Stalking Horse (A) the Minimum Overbid (as defined in the Bidding Procedures), (B) the requirement that all (i) Inventory Overbids, (ii) All Assets Overbids, (iii) Successful Bids and (iv) credit bids accepted by the Debtors as a Qualified Bid (each as defined in the Bidding Procedures) agree to (x) payment of the Purchase Order Obligations (as defined in the Agency Agreement) (either through direct reimbursement to the Stalking Horse for goods that have been paid for and received, and/or assumption of obligation (including replacement of any letter of credit delivered by the Stalking Horse to an applicable vendor)) and payment to the respective vendors for goods that have not yet been received and (y) payment of the Signage Cost Obligations (as defined in the Agency Agreement) (either through direct reimbursement to the Stalking Horse and/or assumption of obligation and payment to the vendor(s)) and (C) the requirement that any credit bid accepted by the Debtors as a Qualified Bid must provide for the payment in cash of the Stalking Horse's Break-Up Fee and Cash Expense Reimbursement (each as defined in the Agency Agreement).

16.     If no Qualified Bid other than the Qualified Bid submitted by the Stalking Horse is received by the Bid Deadline, then the Auction will not be held and the Debtors shall promptly seek this Court's approval of the Agency Agreement with the Stalking Horse.

DOCS_DE:197868.2 11903/001

17.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Store Closing Sales.

18.    Bidding at the Auction shall be transcribed.

19.    Only Qualified Bidders will be permitted to submit bids at the Auction.

20.    The Sale Hearing will be held in this Court on **March 3, 2015 at 11:30 a.m. (Eastern Standard Time)**.  The Sale Hearing may be adjourned or rescheduled by the Debtors, with the consent of the Stalking Horse, without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

21.    All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Transaction and the construction and enforcement of the Agency Agreement.

22.    In the event there is a conflict between this Order and the Motion or the Agency Agreement, this Order shall govern and control.

23.    The Debtors are hereby authorized to take such steps and incur such expenses as may be reasonably necessary or appropriate to effectuate the terms of this Order.

24.    The provisions of this Order, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) or reorganization or liquidation of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the rights and interests granted pursuant to this Order, shall continue

12

in these or any superseding cases and shall be binding upon the Debtors and its successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in this case shall be and hereby is authorized to perform under this Order upon the appointment of such trustee without the need for further order of this Court.

25.     Notwithstanding any applicability of Bankruptcy Rules 6004 and 6006 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26.     The Stalking Horse's right to receive payment of the Bidding Protections as provided in Section 16.11 of the Agency Agreement shall be the sole and exclusive remedy of the Stalking Horse in the event of termination of the Agency Agreement.

27.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Protections or the Agency Agreement.

Dated:  Wilmington, Delaware
        February 25, 2015

Honorable Mary F. Walrath
United States Bankruptcy Judge

13

DOCS_DE:197868.2 11903/001