IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CACHE, INC., *et al.* [1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 15-10172 (MFW)<br><br>(Jointly Administered)<br><br>RE: Docket 13, 196<br>Hearing Date: March 3, 2015 at 11:30 a.m.<br>Objection Deadline: March 2, 2015 at 12:00 p.m. |

**OBJECTION BY WESTFIELD, LLC AND CERTAIN OF ITS AFFILIATES TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF**

Westfield, LLC, and certain of its affiliates that are landlords in these cases as set forth on **Schedule A** attached hereto (collectively, the "Westfield Landlords"), hereby submit this Objection (the "Objection") to Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief, dated February 4, 2015 (Docket No. 13, the "Sale Motion"), and in support thereof, state as follows:

I. **BACKGOUND**

1. On February 4, 2015 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

10056

Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2. The Westfield Landlords are the landlords and certain of the Debtors are the tenants pursuant to unexpired leases (the "Westfield Leases") of nonresidential real property for retail stores (the "Premises") located at shopping centers (the "Centers") around the country.

3. Each of the Centers constitutes a "shopping center" as that term is used in 11 U.S.C. § 365(b)(3).

4. Pursuant to the Sale Motion and a bidding procedures order entered by the Court on February 25, 2015 (Doc. No. 196, the "Bidding Procedures Order"), the Court has established procedures for the filing of objections to (a) the Debtors' proposed Cure Costs,[2] (b) the possible assumption and assignment of certain of the Debtors' real property leases, including the Westfield Leases, to one or more proposed assignees for the Debtors' leases (the "Proposed Assignee"), and (c) the conduct of going-out-of-business sales at the Debtors' leased premises, including the Premises ("Store Closing Sales").

II. **SALE MOTION OBJECTIONS**

  A. <u>**Objection to Assumption and Assignment of the Westfield Leases**</u>

5. Before assuming a lease of a shopping center that is in default, a debtor must, *inter alia*, provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[3] Bankruptcy Code section 365(b)(3) states:

---

[2] Any capitalized terms that are used, but not defined, shall have the meanings ascribed to such terms in the Bidding Procedures Order.

[3] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an ... unexpired lease of the debtor, the trustee may not assume such ... lease unless, at the time of assumption of such ... lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default ... (B) compensates, or provides adequate assurance that it will promptly compensate ... [the landlord] for any actual pecuniary loss ... resulting from such default, and (C) provides adequate assurance of future performance under such ... lease."

2

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

6. Because the Westfield Landlords have yet to receive any information about, let alone the identity of, the ultimate Proposed Assignee, the Westfield Landlords object to the proposed assumption and assignment of the Westfield Leases to any Proposed Assignee for lack of adequate assurance.

### B. The Debtors Have Not Provided Adequate Assurance of the Proposed Assignee's Ability to Satisfy the Debtors' Financial Obligations Under the Westfield Leases

7. As stated above, the Westfield Landlords have not been provided with the identity of, or financial information for, the Proposed Assignee (such as a basic list of its assets, liabilities and projected available liquid assets and/or free cash flow), and thus, they cannot determine whether the Proposed Assignee can provide adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b) and (f).

8. Under 11 U.S.C. § 365(b)(1) and (b)(3) and under 11 U.S.C. § 365(f)(2)(B), the Westfield Landlords are entitled to "adequate assurance" of future performance by the Proposed Assignee. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); c.f., In re Embers 86th Street, Inc., 184 B.R. 892, 900-01 (Bankr.S.D.N.Y. 1995) (adequate assurance of payment of cure did not exist where plan was to "meet its projections by reducing staff (and thereby affording customers fewer services) while simultaneously offering smaller food portions at increased prices"); Matter of World Skating Center, Inc., 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); In re Future Growth Enterprises, Inc., 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

9. Additionally, pursuant to 11 U.S.C. §365(l), the Westfield Landlords request that the Proposed Assignee be required to provide the Westfield Landlords with an adequate security deposit under each of the Westfield Leases. See 11 U.S.C. §365(l) ("[i]f an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant"). The Westfield Landlords request a minimum of two months' rent under each of the Westfield Leases as an appropriate security deposit.

10. Also to the extent that the Proposed Assignee is a single purpose entity (i.e. a "NewCo") or not the main operating company with substantial assets, the Westfield Landlords demand that a guaranty by a suitable entity be provided.

4

### C. The Debtors Have Not Provided Adequate Assurance of Future Performance of Lease Terms

11.     The Westfield Landlords object to any attempts by the Debtors and/or the Proposed Assignee to modify the Westfield Leases or any of the Westfield Landlords' rights thereunder. The Westfield Leases must be assumed and assigned without modification, with all of their benefits and burdens, as expressly provided in 11 U.S.C. §365(b)(3)(C). See Thompson v. Texas Mexican Railway Co., 328 U.S. 134 (1946); In re Jamesway Corp., 201 B.R. 73, 76 (Bankr. S.D.N.Y. 1996); Rockland Center Assoc. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1985).

12.     Furthermore, "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers." In re Joshua Slocum Ltd., 922 F.2d at 1086. "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." Id. "Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3rd Cir. 2000), cert. denied, 121 S.Ct. 175 (2000) (citation omitted).

13.     Specifically, the Debtors should not be permitted to limit the Westfield Landlords' rights under the Westfield Leases to assert claims against the Proposed Assignee for accrued but as yet unbilled adjustments for such items as common area maintenance charges and taxes ("Adjustments"). The Proposed Assignee will receive the benefit of any Adjustments in

5

the tenant's favor under the Westfield Leases and thus the Proposed Assignee should be required to accept the burdens of any Adjustment in the Westfield Landlords' favor.

14. The Westfield Landlords also object to any attempt by the Debtors to assume the Westfield Leases free and clear of the Debtors' indemnity obligations (including, without limitation, accrued obligations for personal injury or negligence claims against the Debtors that could be asserted against the Westfield Landlords) under the Westfield Leases (collectively, the "Unliquidated Claims"). Again, 11 U.S.C. §365(b)(3) requires that the Westfield Leases be assumed "subject to all the provisions thereof." 11 U.S.C. §365(b)(3)(C). The Westfield Landlords' Unliquidated Claims under the Westfield Leases should be preserved and survive any order authorizing assumption of the Westfield Leases.

15. Accordingly, any requests by the Debtors to modify clauses in the Westfield Leases to suit the desires of a Proposed Assignee are without merit and inconsistent with the protections afforded by 11 U.S.C. §365(b)(3) to lessors of real property contained within a shopping center. To the extent this Court authorizes assumption and assignment of the Westfield Leases, the Proposed Assignee must be required to accept all clauses in that Westfield Leases. Id.

16. In the Sale Motion, the Debtors request that the Court "invalidate" lease provisions that restrict the Debtors' ability to conduct the Store Closing Sales. *See* Sale Motion at ¶ 67. This request is too broad. Any Court order authorizing the Debtors or their agent to conduct Store Closing Sales and/or any order authorizing assumption and assignment of Westfield Leases should simply authorize the Store Closing Sales and/or the assignment of leases notwithstanding such restrictions in the Westfield Leases, as opposed to "invalidating" those provisions.

### D. The Debtors Also Have Not Provided Adequate Assurance of Future Performance of Their Cure Obligations

17. In the event that the Westfield Leases are assumed and assigned to the Proposed Assignee, the Debtors shall be required to, among other things, cure all defaults under the Westfield Leases and compensate the Westfield Landlords for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b)(1). As of the date of the filing of this Objection exclusive of (i) interest, (ii) any amounts that may become outstanding hereafter, (iii) Adjustments, and (iv) any Unliquidated Claims, the proper 11 U.S.C. § 365(b)(1) "cure" amounts for the Westfield Leases are as set forth in detail on the attached Exhibit 1 (the "Cure Amounts").

18. The Cure Amounts set forth on Exhibit 1, pursuant to the terms of the Westfield Leases and 11 U.S.C. § 365(b)(1), may be supplemented to include interest (on prepetition arrearages only). The Cure Amounts include a reasonable amount of estimated attorneys' fees that will likely be incurred by the Westfield Landlords as a result of the Debtors' bankruptcy case in the amount of $1,500 per Lease. See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co., 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); In re East 44th Realty, LLC, No. 07 Civ. 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) (affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable); In re Beltway Medical, Inc., 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) "Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorney's fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); In re Entertainment, Inc., 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (interest and attorneys' fees

must be paid as provided for in the assumed lease); In re MS Freight Distribution, Inc., 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

19. Finally, if the Court authorizes the Debtors to assume and assign the Westfield Leases notwithstanding this Objection, the Debtors should be required to deposit in a segregated account funds equal to the cure amounts asserted herein to provide adequate assurance that the Westfield Landlords actually receive the cure amounts to which they are entitled to under 11 U.S.C. § 365(b). Given the Westfield Landlords' experience with non-debtor assignees that have purchased leases out of a chapter 11 case and then fail to pay all of their agreed-upon cure obligations before themselves seeking chapter 11 bankruptcy protection, requiring adequate assurance in the manner requested by the Westfield Landlords herein is appropriate. See, e.g., In re Whitehall Jewelers Holdings, Inc., Case No. 08-11261-KG (Bankr. D. Del. 2008) (chapter 11 filing a few months after purchasing leases out of In re Friedman's Inc., Case No. 08-10161-CSS (Bankr D. Del. 2008) and without satisfying cure obligations); In re BH S&B Holdings, LLC, Case No. 08-14604-MG (Bankr. S.D.N.Y. 2008) (chapter 11 filing a few months after purchasing leases out of In re Steve & Barry's Manhattan, LLC, Case No. 08-12579-ALG (Bankr. S.D.N.Y. 2008) and without satisfying cure obligations).

### E.  Request for Evidentiary Hearing and Establishment of a Discovery Schedule

20. Pursuant to Rule 6006(a) of the Federal Rules of Bankruptcy Procedure, the Motion initiated a contested matter under Rule 9014. See Fed. R. Bankr. P. 6006(a) ("[a] proceeding to assume, reject, or assign an . . . unexpired lease, other than as part of a plan, is governed by Rule 9014" ).

21.     Rule 9014(c) contemplates the applicability of most of the discovery-related rules that govern adversary proceedings. See Fed. R. Bankr. P. 9014(c).

22.     Additionally, pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure, the Court "shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses will testify." Fed. R. Bankr. P. 9014(e).

23.     To the extent the Westfield Landlords cannot reach agreement with the Debtors and the Proposed Assignee regarding a consensual assumption and assignment of any of the Westfield Leases, the Westfield Landlords may wish to take discovery of the Debtors and the Proposed Assignee regarding, *inter alia*, the Debtors' financial condition at the time it entered into the Westfield Leases and the Proposed Assignee's current financial condition and operating performance, and will need adequate time to prepare, before a contested evidentiary hearing on the request in the Sale Motion to assume and assign the relevant Westfield Lease(s).

24.     Accordingly, with respect to any non-consensual requests to assume and assign any Westfield Leases, the Westfield Landlords respectfully ask this Court to use the Sale Hearing on the Motion as a status conference to establish a discovery schedule and an appropriate date for a final evidentiary hearing on the proposed assumption and assignment of the Westfield Leases.

### F.     Objection to Proposed Store Closing Sales Guidelines

25.     The Debtors have submitted generally acceptable proposed Sale Guidelines set forth in Exhibit 8.1 to the Agency Agreement that are to be binding upon the Westfield Landlords and the Stalking Horse liquidation agent (the "Agent") conducting the Store Closing Sales at the Premises. However, in view of 11 U.S.C. § 363(e), at a minimum, the Store Closing

Sales should be subject to somewhat more restrictive Court-ordered Store Closing Sales guidelines which would (in addition to the restrictions in the Debtors' proposed Sale Guidelines) more evenly balance the Debtors' obligation to maximize value to the estates and the Westfield Landlords' need to preserve the image of quality and prosperity at the Centers (the "Modified Sore Closing Guidelines"):

a. Limit the Agent to a reasonable number and size of signs in the Store as follows: signs shall be limited to the lesser of four window signs or one per window, each of which shall not exceed 48 inches by 36 inches and shall be at least twelve inches inside the glass storefront windows; in addition to window signs, no more than five hanging signs for each 1,000 square feet of leased space shall be posted in the interior of a store, each sign not to exceed 37 inches by 26 inches; "toppers", if any, shall not exceed 7½ inches by 11 inches, shall be of the same color(s) as the other signs, and shall be limited to one for each rack, counter or shelf. No interior or exterior banners shall be permitted at the Center. No "Popsicle Stick" signs, A-frame signs or anything similar shall be used anywhere on Center property.

b. Require the Agent to abide by the Center's hours (both opening and closing times).

c. Prohibit advertising and/or signage from containing the terms "going out of business sale," "GOB", "bankruptcy sale," "Chapter 11 sale," "lost lease," "court ordered sale," "liquidation sale," or "total liquidation sale."

d. Prohibit the distribution of handbills, leaflets and other written materials

outside of the Store and on Center property.

e. Prohibit sign walkers on Center property.

f. Prohibit augmentation of the Debtors' inventory.

g. To the extent that a Westfield Landlord believes that the Agent is conducting a Store Closing Sale in violation of the Modified Store Closing Guidelines (an "Alleged Violation"), the Westfield Landlord should have to provide not more than 24 hours' notice to the Debtors and the Agent, subject to the Court's calendar, before an expedited hearing is held on the Alleged Violation. Furthermore, the Westfield Landlord should be permitted to exercise peaceable self-help in advance of a Court order with respect to obvious violations of the Modified Store Closing Guidelines (such as preventing sign walkers from being utilized on Center property by having local police enforce trespassing and safety laws and removing any signs that may be placed in the parking fields or other common areas of the Center) pending a ruling by the Court.

h. The Modified Store Closing Guidelines should apply regardless of whether the specific conduct is restricted under the Westfield Lease. Additionally, compliance with the Modified Store Closing Guidelines should not be excused based on alleged "customary practices" at the Premises or Center.

i. Condition the Store Closing Sales upon the Debtors' prompt compliance with its ongoing rental and other obligations under the Westfield Leases in accordance with §365(d)(3) of the Bankruptcy Code.

11

    j.    The Store Closing Sales shall end by April 30, 2014.

    k.    The Agent shall be liable for any damage to, or abandoned trash or debris at, the Premises.

**G.    Joinder in Other Landlord Objections**

26.    The Westfield Landlords join in the objections of other landlords to the extent not inconsistent with the objections raised herein.

27.    Finally, any order granting the Sale Motion (the "Sale Order") should expressly provide that the Sale Order, with respect to the terms and conditions upon which Store Closing Sales shall be conducted, shall be subject at all times to any side agreements between the Agent and the applicable landlord.

WHEREFORE, the Westfield Landlords respectfully request that this Court enter an order:

    a.    Sustaining this Objection;

    b.    Denying the Debtors' request to assume and assign to, as of yet, unknown Proposed Assignee(s), the Westfield Leases unless the Debtors and the Proposed Assignee(s) meet all requirements under the Bankruptcy Code in accordance with this Objection;

    c.    Establishing a fair and appropriate discovery and evidentiary hearing schedule in connection with any non-consensual request to assume and assign any of the Westfield Leases;

    d.    Adopting its requested modifications to the Debtors' proposed Sale Guidelines; and

    e.    Granting the Westfield Landlords such other and further relief as the Court deems appropriate.

Dated: February 26, 2015

        SEITZ, VAN OGTROP & GREEN, P.A.

        /s/ Kevin A. Guerke
        Kevin A. Guerke (4096)
        222 Delaware Avenue, Suite 1500
        P.O. Box 68
        Wilmington, DE 19801
        (302) 888-0600

        and

        Niclas A. Ferland, Esq.
        Ilan Markus, Esq.
        LeClairRyan, a Professional Corporation
        545 Long Wharf Drive, 9th Floor
        New Haven, CT 06511
        (203) 672-3211
        niclas.ferland@leclairryan.com
        ilan.markus@leclairryan.com

        Counsel to: Westfield, LLC and certain of its
        affiliates as set forth on <u>Schedule A</u> attached hereto