IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re: | Chapter 11 |
| CACHÉ, INC., *et al.*,[1] | Case No. 15-10172 (MFW) |
| Debtors. | (Jointly Administered) |
| | Obj. Deadline: Mar. 2, 2015 at 12:00 p.m.<br>Hearing Date: Mar. 3, 2015 at 11:30 a.m.<br>Docket Ref. Nos. 13 & 196 |

---

**OBJECTION OF SLTS GRAND AVENUE II, L.P.; CROSSGATES MALL GENERAL COMPANY NEWCO, LLC; AND PYRAMID WALDEN COMPANY, L.P. TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS (B) STORE CLOSING SALES (III) GRANTING RELATED RELIEF AND CURE AMOUNTS**

SLTS Grand Avenue II, L.P.; Crossgates Mall General Company NewCo, LLC; and Pyramid Walden Company, L.P. (collectively the "Landlords"), by and through their attorneys, Menter, Rudin & Trivelpiece, P.C. and Ballard Spahr, LLP, bring this objection (the "Objection") to the *Debtors' Motion for Orders (i)(a) Authorizing Entry into Agency Agreement, (b) Authorizing Bidding Protections, (c) Authorizing Bidding Procedures and Auction and (d) Scheduling Sale Hearing and Approving Notice Thereof; (ii) Authorizing (a) Sale of Assets and (b) Store Closing Sales and (iii) Granting Related Relief* (the "Motion") (Dkt. No. 13) and the Debtors' proposed cure amounts.

---

[1] The Debtors with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

**JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**BACKGROUND**

2. On February 4, 2015 (the "Petition Date"), the above captioned debtors (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[2] with the Court.

3. Upon information and belief, the Debtors are operating their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. The Landlords and one of the Debtors are parties to unexpired leases of nonresidential real property pursuant to written leases (collectively the "Leases") of premises (collectively the "Premises") at the following locations:

| Landlords | Shopping Center | Location |
|---|---|---|
| SLTS Grand Avenue II, L.P. | Southlake Town Square Grand Avenue (Phase 5) | Southlake, Texas |
| Crossgates Mall General Company NewCo, LLC | Crossgates Mall | Albany, New York |
| Pyramid Walden Company, L.P. | Walden Galleria | Buffalo, New York |

5. The Premises are located within "shopping centers" as the term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3d Cir. 1990).

6. On February 25, 2015, the court entered an *Order (i)(a) Authorizing Entry Into Agency Agreement, (b) Authorizing Bidding Protections, (c) Authorizing Bidding Procedures and Auction and (d) Scheduling Sale Hearing and Approving Notice Thereof and (ii) Granting Related Relief* (the "Bidding Procedures Order"). (Dkt. No. 196.) The Bidding Procedures

---

[2] All statutory references hereinafter are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, unless otherwise indicated.

Order approves procedures for the submission of bids for an auction (the "Auction") of the Debtors' assets, including, upon information and belief, the Leases. (Bidding Procedures Order, ¶ 3.) The Auction is scheduled to commence on Monday, March 2, 2015 at 10:00 a.m. The Bidding Procedures Order also approves the Debtors' entry into an agency agreement (the "Agency Agreement") with SB Capital Group, LLC and Tiger Capital Group, LLC (collectively the "Stalking Horse") to conduct store closing sales at between 148 and 163 of the Debtors' retail locations. (Motion, ¶ 8.) The Agency Agreement is to serve as the stalking horse bid and be subject to higher or better bids at the Auction, including a going concern sale offer for the Debtors' assets. (*Id.*) The Agency Agreement includes proposed sale guidelines for the conduct of store closing sales at many of the Debtors' locations (the "Proposed Sale Guidelines"). (Motion, Ex. B.)

7.      The Bidding Procedures Order provides that within one business day of entry thereof, the Debtors shall file and serve a "Cure Notice," as that term is defined in the Bidding Procedures Order, on all lease counterparties whose leases may be assumed and assigned. (Bidding Procedures Order, ¶ 10.) The Cure Notices propose cure amounts for these leases and objection to such cure amounts are due on March 2, 2015 at 12:00 p.m. (*Id.*)

8.      The Bidding Procedures Order provides that bids for the Debtors' assets are due on Sunday, March 1, 2015 and that information regarding a prospective bidder's ability to comply with the obligations of a lease it wishes the Debtors to assume and assign ("adequate assurance information") is due at the same time. (Bidding Procedures Order, Ex. A, ¶ C(1)(b).) It is uncertain when lease counterparties will receive adequate assurance information, but their deadline to file an objection to assumption and assignment on that basis is at or prior to the hearing to approve the sale (the "Sale Hearing"). (Bidding Procedures Order, ¶ 13.)

9.	The Sale Hearing is scheduled for March 3 at 11:30 a.m. and a closing of the sale is scheduled to take place on March 4, 2015.

10.	The relief requested in the Motion and Proposed Sale Guidelines deprive the Landlords of their due process rights and their rights under § 365 of the Bankruptcy Code and the Leases. Thus, the Landlords, in addition to objecting to proposed cure amounts, make this precautionary objection to assumption and assignment of their Leases.

## OBJECTION

### I. Adequate Assurance of Future Performance

11.	Section 365 of the Bankruptcy Code controls the assumption and assignment of nonresidential real property leases, and requires, *inter alia*, that a debtor provide adequate assurance that a proposed assignee has the ability to perform under such lease as a condition to assuming and assigning the lease. 11 U.S.C. §§ 365(b)(1)(C) & (f)(2). The debtor bears the ultimate burden of persuasion as to issues under 11 U.S.C. § 365. *See In re Rachels Industries, Inc.,* 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir. 1985). Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under Section 365(b), including sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981); *In re Belize Airways*, 5 B.R. 152 (Bankr. S.D. Fla. 1980). Courts also look to the operating experience of the proposed assignee. *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

12. Furthermore, where the lease involved is a shopping center lease, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the lease under Section 365(b)(1)(C). *In re Arden and Howe Associates, Ltd.,* 152 B.R. 971, 976 (Bankr. E.D. Cal. 1993). Such heightened adequate assurance requirements include assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
> (B) that any percentage rent due under such lease will not decline substantially;
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3). The Debtors must satisfy the foregoing adequate assurance requirements as a condition to assumption and assignment of the Leases.

13. The Bidding Procedures Order provides that unless a cure objection is timely filed and served as provided therein, cure amounts that have been proposed by the Debtors (the "Proposed Cure Amounts") will become binding on lease counterparties. (Procedures Order, ¶ 12).) Furthermore, the Motion provides that:

> Except to the extent otherwise provided in the agreement(s) entered into with the Successful Bidder(s), subject to the payment of any Cure Costs, the assignee of any Assumed Contracts will not be subject to any liability to the assigned contract or lease counterparty that accrued or arose before the closing date of the sale of the Assets and the Debtors shall be relieved of all liability accruing or arising thereafter pursuant to section 365(k) of the Bankruptcy Code.

(Motion, ¶ 89.) This relief violates the Landlords' rights to adequate assurance of future performance, as any proposed assignee of the Leases must be liable for accrued obligations which have not been billed or have not come due under the Leases. Liability for all accrued and

5

unbilled obligations must be assumed by any assignee of the Leases, irrespective of when they accrued. Such obligations include adjustments and reconciliations relative to periods before any assignment of the Leases. In addition, any assignee of the Leases must assume all obligations to indemnify and hold the Landlords harmless for events occurring prior to any assumption and assignment. This result is mandated by the requirement that the Debtors provide adequate assurance of future performance under the Lease. *See* 11 U.S.C. §§ 365(b)(1)(A), (B) and 365(f)(2). Claims for indemnity may include, but are not limited to, (i) claims for personal injuries which occur at the Premises, where the Landlords are joined as party defendants, (ii) damage and destruction to the property by Debtors or their agents, and (iii) claims for environmental damage or environmental cleanup.

14. Finally, as a precondition to any assumption and assignment of the Leases, any proposed assignee should be required to provide a guaranty or other suitable credit enhancement. Such relief is appropriate pursuant to § 365(l), which provides that;

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

15. The Landlords object to any assumption or assignment of their leases absent strict compliance with all requirements of Section 365 of the Bankruptcy Code, including adequate assurance of future performance.

## II.    Sale Guidelines

16. Section 363(b)(1) provides that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); s*ee In re Ames Dep't*

*Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992). Nevertheless, § 363(e) provides that the Court may "prohibit or condition" the sale, use, or lease of property upon the request of a party in interest in order to afford the protesting party adequate protection of its interest. 11 U.S.C. § 363(e). "§ 363(e) reserves for Bankruptcy Courts the discretion to condition the time, place and manner of store closing sales thereby providing adequate safeguards to protect shopping center landlords and their other tenants . . . ." *In re Ames Dep't. Stores, Inc.*, 136 B.R. at 359. The Court should thus seek to balance the Debtors' interests in liquidating their assets and the Landlords' interests in maintaining a certain level of decorum and standard of appearance at their shopping centers. The Motion seeks to "invalidate" lease provisions that restrict the Debtors' ability to conduct store closing sales. (Motion, ¶ 16.) The Landlords therefore respectfully request that the Court place reasonable limitations on the Stalking Horse's or any other successful bidder's right to conduct store closing sales.

17. The Landlords and the Stalking Horse have discussed the Landlords' concerns regarding the Proposed Sale Guidelines, and are working on resolving them, but have yet to reach a resolution. Furthermore, to the extent the Stalking Horse is not the successful bidder and another liquidation bidder is, any store closing authorized by the Court should be conducted in accordance with the limitations addressed below.

18. The Proposed Sale Guidelines (and any other proposed sale guidelines) should be revised to provide as follows:

**(a) Banners** – There should be no exterior banners at Landlords' Premises. While two of the Landlords' centers are located in enclosed malls the Southlake Town Square center is not and there is no basis for distinguishing between the two with regard to prohibiting exterior banners. The Southlake Landlord and other tenants would be

detrimentally impacted by any exterior banner and an exterior banner would be completely out of character. If the Court, however, does allow exterior banners, then there should be only one such banner no taller than two feet, no wider than the storefront, and hung in a place consented to by the Landlord, and the Stalking Horse or other successful bidder should be obligated to repair any damage done as a result of hanging the banner. Furthermore, interior banners should be limited to one per store, not larger than 3 feet by 15 feet and hung in the rear third of the Premises.

**(b) Signage and Advertising** – Only the following should be permitted to describe the sales in any signage or advertising: "store closing sale," "sale on everything," or "everything must go." Signage and advertising may not include any of the following to describe the sale: "Total Liquidation," "Liquidation," "Court Ordered," "Bankruptcy," "Chapter 11," "Lost our Lease," or "Bare to the Walls." There should be no more than one sign per window and no window sign should exceed thirty-six inches by sixty inches. All window signs should be recessed at least twelve inches from the glass. No window signs should be taped, stapled, or otherwise affixed together to exceed the thirty-six inch by sixty inch size limitation. In addition to the window signs, there should be no more than six additional hanging interior signs per 1,000 square feet of leased space in the Premises, and each such additional interior sign should not exceed forty inches by twenty-eight inches. "Toppers" should not exceed eight and a half inches by eleven inches. Signage should be limited to three colors (not including black and white) and should not be day-glo or neon. All signage should be in English and no signs should be taped, push-pinned, or otherwise affixed to the walls. Additionally, the following should not be permitted outside the Premises

or on areas adjacent to the shopping centers: tethered hot-air or other balloons or other inflatable devices, inflatable images, sandwich boards, A-Frames, sign walkers, any items on rooftops, flashing lights, vehicles advertising the sale, strobe lights, spotlights, bullhorns or any type of amplified sound, and any exterior signs anywhere outside of the Premises.  Customers should not be solicited on shopping center property outside the Premises.

**(c) Signage Removal** – At the conclusion of the sales at the Premises, all signs should be removed and the Stalking Horse or other successful bidder should be responsible for the reasonable repair of any damage caused by the hanging or removal of signs.  At the conclusion of the sales, the Landlords should have reasonable access to the Premises to dress and barricade the windows and such other reasonable access as provided by the lease of the Premises.

**(d) Augmentation** – Augmentation of the Debtors' inventory should be limited to inventory of like kind and quality to that which is customarily sold at the Premises.

**(e) Hours and Housekeeping** – During the store closing sales, the Premises should be open for normal hours of operation as required by the Leases of the Premises.  Also, the Premises and surrounding areas should be kept clear and orderly and the Stalking Horse or other successful bidder should abide by all shopping center regulations concerning maintenance, security, trash removal, and similar health and safety requirements.  The sales should conclude on or before May 31, 2015, unless the Landlords agree otherwise in writing.

**(f) Auction** – No auctions, fire sales, tent sales, sidewalk sales, or other outside or common area sales should be allowed.

**(g) Furniture, Fixtures, Equipment** – Furniture, fixtures and equipment ("FF&E") sold during the sale at the Premises should not be removed through the front entrances and should only be removed through the service entrances or other entrances designated by the Landlords. Prior to the sale of any FF&E, if requested by any of the Landlords, the Stalking Horse or other successful bidder should conduct a walk-through with the Landlord to discuss issues with respect to the potential sale/removal of any FF&E that the Landlord believes does not belong to (or may not be sold by) the Debtor, Stalking Horse, or other successful bidder. At the conclusion of the sales at the Premises, the Premises should be vacated in "broom-clean" condition and otherwise in the same condition as on the commencement of the sale, ordinary, wear and tear excepted.

### III. Cure

19. The Proposed Cure Amounts are incorrect. The Proposed Cure Amounts and the actual cure amounts including March rent, but not including attorneys' fees. (the "Actual Cure Amounts"), as of March 1, 2015, are as follows, and are subject to change:

| Shopping Center | Location | Proposed Cure | Actual Cure |
|---|---|---|---|
| Southlake Town Square Grand Avenue (Phase 5) | Southlake, Texas | $18,609.62 | $21,739.67 |
| Crossgates Mall | Albany, New York | $20,376.76 | $20,635.39 |
| Walden Galleria | Buffalo, New York | $21,426.57 | $21,650.24 |

Itemizations of the foregoing are attached hereto as Exhibit "A." Copies of the title pages, relevant provisions, and signature pages of the Leases are attached hereto as Exhibit "B."

20. Neither the Proposed Cure Amounts or Actual Cure Amounts include accrued, but unbilled or not yet due, rent and charges, such as adjustments and reconciliations. In addition, the Proposed Cure Amounts do not include obligations to indemnify and hold the Landlords

harmless for events occurring prior to any assumption and assignment. As previously discussed, any assignee of the Leases should be required to assume all liabilities for accrued, but unbilled or not yet due, obligations and indemnity obligations owed pursuant to the Leases, as assumption of such liabilities is mandated by the requirement that such assignee provide adequate assurance of future performance with respect to the Leases.

21.     Furthermore, the Landlords are entitled to attorneys' fees under the Leases. Copies of the attorneys' fees provisions from the Leases are included in Exhibit "B." Such fees are properly included in the Landlords' cure amount as actual pecuniary losses suffered by the Landlords. *See In re Von Keisler*, 166 B.R. 620 (Bankr. N.D. Tex. 1994) ("Assumption of the contract would mean that the Debtors would be required to promptly 'cure' (pay off) the default; compensate the Movants for any 'actual **pecuniary loss**' resulting from the default *(e.g.,* **attorney's fees**); and provide 'adequate assurance of future performance' under the Contract."); *In re Bourbon Saloon, Inc.*, 2013 Bankr. LEXIS 4290, *29 (Bankr. E.D. La. Oct. 11, 2013) ("§ 365 does recognize a landlord's right to compensation for actual pecuniary losses resulting from debtor's default under an unexpired lease assumption, and attorney fees qualify as 'actual pecuniary losses' when state law would recognize them as such."); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186, *26 (S.D.N.Y. Apr. 8, 2002) ("recovery of attorneys' fees and interest under Section 365 is appropriate where the lease at issue provides for such recovery as an obligation of the Debtor"); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 81 (Bankr. S.D.N.Y. 2004) ("The payment of attorney fees *is* an obligation of the lease that must be satisfied under section 365(d)(3) when the lease at issue provides for such recovery as an obligation of the Debtor"); *In re Child World*, 161 B.R. 349, 353 (Bankr. S.D.N.Y. 1993) ("Although attorneys' fees are not independently recoverable under the Bankruptcy Code,

section 365(b)(1)(B) allows for such recovery if based upon the existence of a separate agreement between the parties."); *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 756 (Bankr. S.D.N.Y. 1986) (Courts "have consistently recognized that an express contractual provision for attorney's fees gives rise to a right to obtain a reasonable attorney's fee as part of curing the debtor's default and in compensation for the landlord's actual pecuniary loss under Section 365 of the Code").

### JOINDER

22. The Landlords join in the objections of other landlords to the extent they are not inconsistent with the relief sought in this Objection.

### RESERVATION OF RIGHTS

23. The Landlords reserve their rights to supplement this Objection and make such other and further objections as they deem necessary or appropriate and reserve all rights to object to, among other things, assumption and assignment of the Leases, cure costs, and proposed store closing sale procedures.

### CONCLUSION

**WHEREFORE**, the Landlords respectfully request that the Court deny the relief requested in the Motion or enter an Order granting relief consistent with the foregoing and any further relief the Court may deem just and proper.

| | |
|---|---|
| Dated: March 2, 2015<br>Wilmington, Delaware | /s/ Leslie C. Heilman<br>Leslie C. Heilman (No. 4716)<br>Matthew G. Summers (No. 5533)<br>**BALLARD SPAHR, LLP**<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: heilmanl@ballardspahr.com<br>       summers@ballardspahr.com<br><br>-AND-<br><br>Kevin M. Newman<br>Adam F. Kinney<br>**MENTER, RUDIN & TRIVELPIECE, P.C.**<br>Office and Post Office Address<br>308 Maltbie Street, Suite 200<br>Syracuse, New York 13204-1439<br>Telephone: (315) 474-7541<br>Facsimile: (315) 474-4040<br><br>*Attorneys for SLTS Grand Avenue II, L.P.; Crossgates Mall General Company NewCo, LLC; and Pyramid Walden Company, L.P.* |