## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CACHÉ, INC., *et al.*,[1] | Case No. 15-10172 (MFW) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: March 3, 2015 at 11:30 a.m. |
| | Objection Deadline: March 2, 2015 at 12:00 p.m. |
| | RE: Docket Nos. 13 and 196 |

**OBJECTION BY 165 E 66 RETAIL, LLC TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF**

165 E 66 Retail, LLC, ("Landlord"), hereby submits this Objection ("Objection") to Debtors' *Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief*, dated February 4, 2015 (Docket No. 13, "Sale Motion"), and in support thereof, state as follows:

### BACKGOUND

1.    On February 4, 2015 ("Petition Date"), the above-captioned debtors ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware ("Court").

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

2.      Landlord is the landlord and Debtor, Cache, Inc., is the tenant pursuant to that certain unexpired lease ("Lease") of nonresidential real property for retail space ("Premises") located at 165 E 66th Street, New York City, New York, identified by the Debtor as store 540.

3.      The Premises is located on the ground floor of a residential building in the Upper East Side of New York City.

4.      Pursuant to the Sale Motion and a bidding procedures order entered by the Court on February 25, 2015 (Docket No. 196, "Bidding Procedures Order"), the Court has established procedures for the filing of objections to (a) the Debtors' proposed Cure Costs, (b) the possible assumption and assignment of certain of the Debtors' real property leases, including the Lease, to one or more proposed assignees for the Debtors' leases ("Proposed Assignee"), and (c) the conduct of going-out-of-business sales at the Debtors' leased premises, including the Premises ("Store Closing Sales").

**OBJECTIONS**

A. **Objection to Assumption and Assignment of the Lease**

5.      Before assuming a lease that is in default, a debtor must, *inter alia*, provide adequate assurance of future performance to the landlord.   In particular, Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an … unexpired lease of the debtor, the trustee may not assume such … lease unless, at the time of assumption of such … lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default … (B) compensates, or provides adequate assurance that it will promptly compensate … [the landlord] for any actual pecuniary loss … resulting from such default, and (C) provides adequate assurance of future performance under such … lease."   11 U.S.C. § 365(b)(1).

6.     Although the Premises is in a residential building in New York City and not a shopping center, Paragraph 62 of the Rider annexed to the Lease provides that "the adequate assurance to be provided Landlord to assure such person's future performance under the lease, including without limitation, the assurance referred to in section 365(b)(3) of the Bankruptcy Code, shall be given to Landlord by Tenant…" Lease Rider ¶ 62.  Accordingly, pursuant to the terms of the Lease, Landlord is entitled to the heightened level of adequate assurance afforded landlords to shopping center leases.   Moreover, because these Premises are located in a residential building, any Proposed Assignee should be subject to even greater scrutiny and deference to the Lease provision which provides that "Tenant agrees to use, occupy, operate and maintain the demised premises …in a manner which shall not detract from the character, appearance or dignity of the building." Lease Rider ¶ 47.

7.     Landlord does not have any information about the identity of the ultimate Proposed Assignee, or any other pertinent information regarding the Proposed Assignee; accordingly, Landlord objects to the proposed assumption and assignment of the Lease to any Proposed Assignee for lack of adequate assurance.

### B.  Objection to Adequate Assurance and Cure Amount

#### 1.  Ability to Satisfy Debtors' Financial Obligations Under the Lease

8.     As of 9:00 p.m. eastern standard time on Sunday, March 1, 2015, Landlord has not been provided with any information regarding the Proposed Assignee such as its identity or financial condition; thus, Landlord is unable to determine whether the Proposed Assignee can provide adequate assurance of future performance within the meaning of 11 U.S.C. § 365(b) and (f).

9.      Pursuant to 11 U.S.C. § 365(b)(1) and under 11 U.S.C. § 365(f)(2)(B), Landlord is entitled to "adequate assurance" of future performance by the Proposed Assignee. *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) (section 365(b) is designed to ensure that parties receive the benefit bargained for if a lease or contact is assumed); *c.f., Matter of World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D. Conn. 1989) ("[a]dequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure the landlord that it will receive the amount of the default"); *In re Future Growth Enterprises, Inc.*, 61 B.R. 469 (Bankr. E.D. Pa. 1986) (lease could not be assumed where operating profit was too narrow to provide adequate assurance that arrearages could be cured).

10.     Additionally, pursuant to Bankruptcy Code Section 365(l), "[i]f an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant." 11 U.S.C. §365(l).  Therefore, Landlord requests that Proposed Assignee provide Landlord with an adequate security deposit.  Landlord requests two months' rent, and reserves the right to require more depending on the identity and financial condition of Proposed Assignee.

11.     If Proposed Assignee is a single purpose entity or subsidiary or affiliate with insufficient assets to satisfy the conditions under the Lease, then Landlord demands a guaranty from a suitable counterparty.

### 2. Future Performance of Lease Terms

12.     Landlord objects to any attempts by the Debtors and/or the Proposed Assignee to modify the Lease or any of Landlord's rights under the Lease. *See Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134 (1946).

13.     Debtors should not be permitted to limit Landlord's rights under the Lease to assert claims against Proposed Assignee for accrued but as yet unbilled adjustments for such items as taxes ("Adjustments").  Proposed Assignee will receive the benefit of any Adjustments in the tenant's favor under the Lease; thus, Proposed Assignee should be required to accept the burdens of any Adjustment in favor of Landlord.

14.     Similarly, Debtors may not assume the Lease free and clear of Debtors' indemnity obligations; including, without limitation, accrued obligations for personal injury or negligence claims against the Debtors that could be asserted against Landlord.  Such claims must be preserved in any order approving the assumption and assignment of the Lease.

15.     Insofar as Debtors request that the Court "invalidate" any lease provision that restricts Debtors' ability to conduct Store Closing Sales, *see* Sale Motion at ¶ 67, Landlord objects and requests that any order authorizing Debtors or their agent to conduct Store Closing Sales do just that rather than invalidate the provision going forward.

### 3.  Future Performance of Cure Obligations

16.     Debtors are required to, inter alia, cure all defaults under the Lease, including compensation for actual pecuniary loss as a result of such defaults. 11 U.S.C. § 365(b)(1). As of the date of the filing of this Objection exclusive of (i) interest, (ii) any amounts that may become outstanding hereafter, (iii) Adjustments, and (iv) any indemnification claims, the proper 11 U.S.C. § 365(b)(1) "cure" amounts for the Lease are as follows:

**$36,694.90**

("Cure Amount").

17.     Landlord, pursuant to Bankruptcy Code section 365(b)(1) reserves the right to supplement the Cure Amount to include interest on prepetition arrearages.  The Cure Amount

includes a reasonable amount of estimated attorneys' fees that will likely be incurred by Landlord as a result of the Debtors' bankruptcy case in the amount of $10,000.00. *See, e.g., Travelers Cas. & Su. Co. of Am. v. Pacific Gas and El. Co.*, 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 978 (Bankr. W.D. Wash. 1994) ("the legislative history of [section 365(d)(3)] and the language of the section itself mandate that a lessor be paid interest, late fees, and legal fees incurred in the first 60 days of the bankruptcy case").

18.     Additionally by the way of adequate assurance of performance of Cure Amount, Landlord requests that Debtors be required to deposit the Cure Amount in a segregated account. As this Court is well aware, purchasers often file for bankruptcy protection themselves without satisfying cure obligations. *See, e.g., In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261-KG (Bankr. D. Del. 2008).

### C. Joinder in Other Landlord Objections

19.     Landlord joins in the objections of other landlords to the extent not inconsistent with the objections raised herein.

**WHEREFORE**, Landlord respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) denying Debtors' request to assume and assign the Lease to Proposed Assignee; (c) granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ Kevin A. Guerke
_____
Kevin A. Guerke (4096)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19801
(302) 888-0600

and

Patricia A. Redmond
Florida Bar No. 303739
predmond@stearnsweaver.com
Eric J. Silver
Florida Bar No. 057262
esilver@stearnsweaver.com
**STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.**
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 789-3200

Attorneys for 165 E 66 Retail, LLC.