**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x
: 
In re : Chapter 11
: 
: Case No. 15-10172 (MFW)
: 
CACHE, INC., : (Jointly Administered)
: 
: 
Debtors. : 
: Hrg. Date: March 3, 2015 at 11:30 a.m. (ET)
: Obj. Due: March 2, 2015 at 12:00 p.m. (ET)
: 
: **Related to Docket Nos. 13 & 196**
---------------------------------------------------------------x

**COMBINED OBJECTION OF THE MACERICH COMPANY, STARWOOD RETAIL PARTNERS LLC, THE FORBES COMPANY, THE RELATED COMPANIES, AND BOULEVARD INVEST, LLC TO: (1) THE UNEXPIRED LEASE OR EXECUTORY CONTRACT ASSUMPTION AND CURE NOTICE; AND (2) DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND (B) STORE CLOSINGS SALES AND (III) GRANTING RELATED RELIEF**

The Macerich Company, Starwood Retail Partners LLC, The Forbes Company, The Related Companies, and Boulevard Invest, LLC (hereinafter, the "Landlords") hereby file this combined objection (the "Objection") to: (1) the Unexpired Lease or Executory Contract Assumption and Cure Notice (the "Cure Notice"); and (2) Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closings Sales and (III) Granting Related Relief, and respectfully represent as follows:

**I.   BACKGROUND FACTS**

1.   Cache, Inc. and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on February

4, 2015. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[1]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth in detail on Schedule A hereto. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See* In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3. On February 4, 2015, the Debtors filed the Debtors' Motion For Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closings Sales And (III) Granting Related Relief (the "Sale Motion"),[2] [Docket No. 13]. On February 23, 2015, the Court approved the Debtors' bidding procedures for the conduct of an auction and sale of the Debtors assets (the "Bidding Procedures Order") [Docket No. 196]. Thereafter, on February 26, 2015, Landlords received the Cure Notice for various of its locations. The amounts set forth in the Cure Notice do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

---

[1] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, the Agency Agreement, and related documents.

## II. CURE OBJECTION

### A. The Debtors' Proposed Cure Amounts Do Not Provide For Payment Of All Obligations Due Under The Leases

4. The Landlords' cure, as compared to the Debtors' cure is summarized below, and those charges comprising the Landlords' cure are more fully detailed in Exhibits A through R, which are attached hereto and incorporated into this Objection by this reference:

| Landlord | Center | Store No. | Debtors' Cure | Landlord Cure[3] |
|---|---|---|---|---|
| Macerich | Arden Fair Mall | 62 | $28,298.22 | **$48,039.14** |
| Macerich | Danbury Fair Mall | 97 | $38,778.49 | **$56,756.18** |
| Macerich | Freehold Raceway | 160 | $23,639.45 | **$39,670.41** |
| Macerich | Fresno Fashion Fair | 239 | $34,599.21 | **$50,555.34** |
| Macerich | Kierland Commons | 510 | $12,780.39 | **$33,981.54** |
| Macerich | Scottsdale Fashion Square | 72 | $11,399.45 | **$30,534.56** |
| Macerich | The Oaks | 140 | $31,852.74 | **$47,331.92** |
| Macerich | Tysons Corner | 543 | $36,170.09 | **$83,812.55** |
| Macerich | Washington Square | 117 | $27,305.01 | **$46,167.21** |
| Starwood | The Mall at Wellington Green | 209 | $30,692.30 | **$48,672.21** |
| Starwood | The Shops at Willow Bend | 208 | $12,958.42 | **$20,607.65** |
| Forbes | Mall at Millenia | 219 | $52,726.12 | **$87,138.15** |
| Forbes | Somerset Collection North | 39 | $37,267.84 | **$67,859.76** |
| Forbes | The Gardens | 47 | $46,550.00 | **$83,336.95** |
| Forbes | Waterside Shops | 90 | $29,447.03 | **$50,576.32** |
| Boulevard Invest | Miracle Mile Shops | 190 | $44,101.06 | **$74,905.29** |
| Related | City Place Retail | 195 | $7,710.72 | **$16,434.24** |
| Related | The Shops at Columbus Circle | 224 | $55,936.40 | **$116,000.11** |

---

[3] The Landlords' Cure does not include charges arising since the filing of this Objection, or charges which have not been directly billed to the Landlords as of the filing of this Objection. The Landlords' Cure also does not include charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to the Debtors failure to pay, or to the extent that there are other charges that come due under the Leases after the date of this Objection, the Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Leases (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

5. In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Leases.

*i.    Year-end adjustments and reconciliations*

6. In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2014 have been yet been billed at most locations, and such charges that are accruing for 2015 will not be billed until 2016). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

7. Nevertheless, Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases. The Debtors (or successor) assume the Leases subject to their terms, and must assume all obligations

- 4 –

owing under the Leases, including obligations that have accrued but may not yet have been billed under each Lease. Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

8. Finally, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents. Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[4] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases. Nothing in any sale order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

ii. *Attorneys' fees, costs, and interest*

9. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993);

---

[4] Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption be in accordance with all provisions of the Leases.

Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

10. The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their Leases. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

11. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a

landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  *Id*., *see also*, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

### iii.    *The cure amounts serve only as estimates*

12.    Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

**B.    The Debtors or Assignee Must Pay Undisputed Cure Amounts Immediately.**

13.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption.  To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

**III.   SALE OBJECTION**

14.   On February 18, 2015, certain landlords including the Landlords set forth herein filed their combined objection to the Sale Motion, and Debtors' Financing Motion (the "<u>Initial Sale Objection</u>") [Docket No. 129].  The objection to the Financing Motion was resolved at a prior hearing.   The sale related issues raised in the Sale Motion were reserved at the hearing to determine bid procedures on February 23, 2015, and such objections carry over to any subsequent sale hearing as though fully incorporated at length herein.

15.   The auction and sale schedule requires Landlords to absorb the cost of filing generalized and unnecessary objections to protect their rights when they have no information on the potential bidders.  As of the morning of March 2nd – one day prior to the sale hearing – Landlords still have no information on the identity of potential bidders. To the extent any going concern bid emerges that seeks an immediate assumption and assignment of the Leases, the Court should continue the Sale Hearing with respect to issues of assumption and assignment of the Leases to allow Landlords some opportunity to receive and review adequate assurance of future performance information, and object, if necessary.  Under the current schedule, there is no opportunity for Landlords to assess any proposed going concern bid prior to the upcoming hearing, and the Debtors cannot provide sufficient notice and information for any such bidder in time for a meaningful evidentiary hearing on issues of adequate assurance of future performance.  Any attempt to go forward with a hearing that involves the assumption and assignment of Leases on Tuesday, March 3rd, disregards due process and the policy behind the Section 365.

**A.   Incorporation of Store Closing Sale Objections.**

16.   Should the Agent or other liquidating bid prevail at the auction, Landlords are confident that they will reach an agreement to resolve the store closing sale issues.  Because Landlords will not know the successful bidder until the conclusion of the auction, the Landlords re-assert all the arguments in the Initial Sale Objection that relate to store closing issues as if set forth herein in full, and reserve the rights to raise any arguments and objections set forth in the Initial Sale Objection at any final hearing on these issues. To the extent that Landlords and any

liquidation bidder have reached an agreement with respect to the conduct of the store closing sales, the Landlords will withdraw their objections to those issues at the Sale Hearing.

**B.     Incorporation of objections to assume and assign Leases.**

17.    Landlords have received no indication of any bid from a going concern purchaser or otherwise seeking an assumption and assignment of the Leases. Similarly, Landlords have received no adequate assurance of future performance information for such potential bids. Landlords will not have an opportunity to review (and request discovery or object) to any adequate assurance information produced between now and the Sale Hearing. To the extent there is a successful bid seeking approval of a going concern purchase, or an assumption and assignment of any Leases, such request should not go forward at the Sale Hearing. To do so upsets due process and the policies behind the Bankruptcy Code. Landlords request that this Court continue any hearing concerning the assumption and assignment of the Leases so that Landlords may have the opportunity to review such information, and if necessary, conduct discovery, so that they receive the protections to which they are entitled under Section 365.

18.    Whether the bid is a going concern bid, or a third-party bid for certain of the Leases, it is unnecessary to move forward with such a bid at the Sale Hearing. In the event of a going concern bid, there is no pressure to commence store closing sales, and March rent will already be due and owing. Therefore, continuing the hearing to allow for the reasonable review of the proposed bidder and any adequate assurance of future performance information does not harm the estate. Landlords submit that the Bankruptcy Code is clear in the protections that it provides Landlords that are faced with a potential involuntary transfer, and the Bankruptcy Code does not provide any circumstance where it is appropriate to deny Landlords those protections. That notwithstanding, even if such circumstances could hypothetically exist, the allocation cost of seven to ten days' worth of rent is not such a circumstance and does not justify denying Landlords' their rights under Section 365.

19.    To the extent there is a bid by third parties seeking an assumption and assignment of certain leases, these assumption and assignments will not occur until after the conclusion of

the store closing sales. As a result, there is no need to force a hearing to approve those potential assumption and assignments on shortened time. The Agent or other liquidator will be responsible to cover operating costs during the store closing sales, so continuing any hearing to assume and assign leases does not prejudice the Debtors.

20. Based on the above, Landlords re-assert all the arguments in the Initial Sale Objection that relate to the assumption and assignment of the Leases as if set forth herein in full, and reserve the rights to raise any arguments and objections set forth in the Initial Sale Objection at any final hearing on these issues.

**C.     Any potential assignee under the Leases should provide a letter of credit, security deposit, or guaranty to secure its performance.**

21. Pursuant to Section 365(l), the Landlords may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that an assignee fails to perform on a going-forward basis. While a proposed assignee may be formed by entities with industry experience and/or adequate capitalization, often the proposed tenant itself does not possess such experience or capitalization or financial history. If such an entity were executing a new lease with Landlords, Landlords would require such security, and it is appropriate for the Landlords to require: (i) a guaranty from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit.

**D.     Any potential assignee must execute an assignment agreement on a form acceptable to Landlords.**

22. If any assumption and assignment of any of the Leases is eventually approved, Landlords request that the Court require the assignee to enter into a short form assignment agreement (the "<u>Agreement</u>"), in a form acceptable to Landlords, that will cause assignee to become directly obligated to Landlords under the Leases. The Agreement shall include the modification of notice addresses for the parties. The Agreement is critical to Landlords for the maintenance of their lease files, and under the laws of various states, it is critical to establish privity of contract between a landlord and the assignee.

### IV. APPROVAL OF A BACK-UP BIDDER REQUIRES A FURTHER HEARING

23. The Sale Motion proposes that the in the event the successful bidder does not close on the sale, then the sale to the back-up bidder may be approved without further hearing or Bankruptcy Court order. This is inappropriate. In the unlikely event that the successful bidder drops out after the Sale Hearing, there will need to be some amount of time for Landlords to make a determination as to ability of the back-up bidder to provide adequate assurance of future performance, and object, if necessary. In the event there are objections to the back-up bidder, the Court should schedule a separate objection deadline and hearing to address any issues concerning the assumption and assignment of the Leases by the back-up bidder.

### V. RESERVATION OF RIGHTS TO RAISE FURTHER OBJECTIONS

24. The Landlords reserve the rights to amend or modify the Objection once the results of the auction become known. Additionally, this Objection is without prejudice to Landlord's ability to raise further objections at the Sale Hearing and the Landlords reserve all rights to: (i) raise all objections to any request to assume and assign the Leases on any grounds, including objections based upon adequate assurance of future performance and the proposed use for any Premises; (ii) object to the form of any asset purchase agreement, agency agreement, or other document executed by the Debtors and the successful bidder; (iii) raise additional objections at this, or any further, sale hearing; (iv) raise all objections in connection with any designation rights agreement with respect to the Leases; (v) require any attempted assignment to comply with all terms of the Leases, and (vi) to seek to continue the Sale Hearing

### VI. JOINDER IN OBJECTIONS BY OTHER LANDLORDS

25. To the extent not inconsistent with the arguments set forth above, Landlords hereby join in the objections raised by other landlords.

## VII. **CONCLUSION**

In order to protect the interests of the Landlords, (i) the cure amounts should be allowed (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) to the extent there is a successful bid that will seek an assumption and assignment of the Leases, it should not go forward at the Sale Hearing, and (iii) the Court should grant such other relief that the Court finds just and proper.

Dated:  March 2, 2015  
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Matthew G. Summers, Esquire (No. 5533)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
         summersm@ballardspahr.com

and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (Cal. Bar No. 174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com

Attorneys for Landlord Creditors
The Macerich Company, Starwood Retail Partners LLP,
The Forbes Company, The Related Companies, and
Boulevard Invest, LLC