# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CACHÉ, *et al.*,[1] | : | Case No. 15-10172 (MFW) |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Sale Hearing Date: March 3, 2015 @ 11:30 a.m. |
| | : | Sale Objection Deadline: March 2, 2015 @ Noon |
| | : | |
---------------------------------------------------------x    Related to Docket Nos. <u>13 and 196</u>

**OBJECTION OF GGP LIMITED PARTNERSHIP, METRONATIONAL CORP. AND GALLERIA MALL INVESTORS LLC TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT, (B) AUTHORIZING BIDDING PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF; (II) AUTHORIZING (A) SALE OF ASSETS AND <u>(B) STORE CLOSING SALES AND (III) GRANTING RELATED RELIEF</u>**

TO THE HONORABLE MARY F. WALRATH,
UNITED STATES BANKRUPTCY JUDGE:

        GGP Limited Partnership ("GGP"), MetroNational Corp. ("Metro") and Galleria Mall Investors LLC ("Galleria" and together with GGP and Metro, the "Objecting Landlords"), by and through their undersigned counsel, hereby file this Objection (the "Objection") to the Debtors' Motion for Orders (I)(A) Authorizing Entry into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store

---

[1] The Debtors are: Caché, Inc.; Caché of Las Vegas, Inc.; and Caché of Virginia, Inc..

Closing Sales and (III) Granting Related Relief (the "Motion"),[2] and respectfully represent as follows:

1. Objecting Landlords are the owners or agents for the owners of certain shopping centers in which Debtors operate or previously operated retail stores pursuant to written leases (the "Leases", and each a "Lease") which are affected by the relief sought by the Motion. All of Objecting Landlords' premises are premises located in shopping centers, as that term is used in 11 U.S.C. § 365(b)(3). *See In re: Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990). The premises affected by the Motion are:

| SHOPPING CENTER | CITY/STATE | STORE # | LANDLORD |
|---|---|---|---|
| Ala Moana Center | Honolulu, HI | 130 | GGP |
| Altamonte Mall | Altamonte Springs, FL | 54 | GGP |
| Baybrook Mall | Friendswood, TX | 141 | GGP |
| Bayside Marketplace | Miami, FL | 3 | GGP |
| Beachwood Place | Beachwood, OH | 32 | GGP |
| Christiana Mall | Newark, DE | 194 | GGP |
| Columbiana Centre | Columbia, SC | 143 | GGP |
| Cumberland Mall | Atlanta, GA | 77 | GGP |
| Fashion Show Mall | Las Vegas, NV | 9 | GGP |
| First Colony Mall | Sugar Land, TX | 501 | GGP |
| Glendale Galleria | Glendale, CA | 63 | GGP |
| Kenwood Towne Centre | Cincinnati, OH | 65 | GGP |
| Lakeside Mall | Sterling Height, MI | 193 | GGP |
| Mall of Louisiana | Baton Rouge, LA | 522 | GGP |
| North Star Mall | San Antonio, TX | 5 | GGP |
| Northridge Fashion Center | Northridge, CA | 264 | GGP |
| Oxmoor Center | Louisville, KY | 98 | GGP |
| Park Meadows | Lone Tree, CO | 250 | GGP |
| Pembroke Lakes Mall | Pembroke Pines, FL | 93 | GGP |
| Perimeter Mall | Atlanta, GA | 43 | GGP |
| Providence Place | Providence, RI | 196 | GGP |
| Staten Island Mall Phase I | Staten Island, NY | 145 | GGP |
| Stonebriar Centre | Frisco, CA | 203 | GGP |
| The Grand Canal Shoppes | Las Vegas, NV | 194 | GGP |
| The Mall in Columbia | Columbia, MD | 192 | GGP |

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and other accompanying documents.

| SHOPPING CENTER | CITY/STATE | STORE # | LANDLORD |
|---|---|---|---|
| The Oaks Mall | Gainesville, FL | 260 | GGP |
| The Shops at LaCantera | San Antonio, TX | 290 | GGP |
| The Woodlands Mall | The Woodlands, TX | 293 | GGP |
| Towson Town Center | Towson, MD | 89 | GGP |
| Village of Merrick Park | Coral Gables, FL | 220 | GGP |
| Willowbrook NJ | Wayne, NJ | 61 | GGP |
| Dallas Galleria | Dallas, TX | 14 | Galleria |
| Memorial City Mall | Houston, TX | 218 | Metro |

**Background**

2.      Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on or about February 4, 2015 (the "Petition Date").  Since the Petition Date, Debtors have been operating and managing their businesses as debtors-in-possession.  The Official Committee of Unsecured Creditors (the "Committee") was appointed on February 13, 2015. [D.I. 115]

3.      The Debtors filed the Motion on the Petition Date, proposing to sell some or all of Debtors' assets, including certain of Debtors' non-residential real property leases, through an auction process.  The Court approved bidding procedures (the "Bidding Procedures) (D.I. 196) on February 25, 2015.  Bids were due on March 1, 2015 by noon.  The auction is scheduled for March 2, 2015 at 10:00 a.m. ET.

**Going-Out-of-Business Sales and Agency Agreement**

4.      In the event that the winning bidder at the auction is the Stalking Horse bidder, objecting Landlords have reached an agreement with the Stalking Horse regarding Going-Out-of-Business ("GOB") sale guidelines and have no objection to the proposed GOB sales.  In the event that the winning bidder is a bidder proposing to conduct GOB sales and is other than the Stalking Horse bidder, Objecting Landlords reserve the right to prosecute

objections against such sales. Objecting Landlords note, however, that they have almost always been able to reach agreement on sale guidelines with each of the national liquidation agents.

## General Objections to Sale of Leases

5.  Objecting Landlords object to any proposed assumption and assignment of their Leases to any "Proposed Assignee" unless Debtors and/or the Proposed Assignee comply with all of the requirements of Sections 365(b) and (f) of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and the Proposed Assignee to satisfy said requirements any proposed assumption and assignment must be denied.

6.  Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code Debtors may only assume and assign the Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided,. . . ." As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> "(A)    of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)    that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center;…."

7.  The burden of proof on adequate assurance issues is with the Debtors. *See In re Lafayette Radio Electronics Corp.* 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

**Adequate Assurance of Future Performance**

8. To date Objecting Landlords have not received any information concerning adequate assurance of future performance regarding any proposed assignee. Indeed, no specific proposed assignee has even been designated. Accordingly, Objecting Landlords request that they be provided with any Proposed Assignee's adequate assurance information immediately following receipt by Debtors, and within twenty-four (24) hours after the Bid Deadline, and demand strict proof at the Sale Hearing of any Proposed Assignee's ability to provide adequate assurance of future performance as required by the Bankruptcy Code. Objecting Landlords also reserve the right to request a continuance of any Sale Hearing in order to properly conduct discovery with regard to the issue of adequate assurance for any assignee.

9. Inasmuch as all of Objecting Landlords' premises are located in shopping centers, adequate assurance information should include, at a minimum, the following: (i) the specific name of the proposed bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate the store; (ii) the Proposed Assignee's intended use for the space; (iii) audited financial statements and annual reports for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the Proposed Assignee, the Proposed Assignee's most recent business plan, all cash flow projections for the Lease subject to the assignment request, and any financial projections, calculations and/or *pro formas* prepared in contemplation of purchasing the Leases; (v) all documents and other evidence of the Proposed Assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the Proposed Assignee whom Objecting Landlords may contact directly in connection with adequate assurance of future performance.

10. In addition, Debtors and any Proposed Assignee must meet the heightened requirements of adequate assurance that the Bankruptcy Code contemplates in the case of such assignments. The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under Section 365(b)(1)(C). *In re: Sun TV and Appliances, Inc.,* 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) – (D). *See Joshua Slocum*, *supra*, at 1086; see also *L.R.S.C. Co. v. Rickel Home Centers, Inc.* (*In re Rickel Home Centers, Inc.*), 209 F. 3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

**Use**

11. In the event that any Proposed Assignee intends a use of the premises other than strictly in accordance with the current permitted use set forth in each Lease, Objecting Landlords object to such change of use. Further, Objecting Landlords specifically object to any attempt by Debtors or any assignee to void or hold invalid or inapplicable any portion of the use

clauses, as well as all other protected provisions, such as radius restrictions. For all of Objecting Landlords' premises the use clauses and numerous other specific provisions are specifically enforceable as provided by Sections 365(b)(3) and 365(f)(1).

### Tenant Mix and Balance

12.     Objecting Landlords also reserve the right to object to any change of use on the grounds that such change may adversely impact tenant mix and balance at one or more of their shopping centers.

### Security Deposit for Assignee

13.     Pursuant to § 365(l) of the Bankruptcy Code, Objecting Landlords demand that any Proposed Assignee post a letter of credit or, in Objecting Landlords' sole discretion, a security deposit, equal to three (3) months rent and additional rental charges under each Lease.

### Cure Amounts

14.     Set forth below are Objecting Landlords' monetary cure claims for amounts due, exclusive of any sums which have become due or been paid after February 25, 2015. The claims set forth are the base cure claim amounts subject to additional qualifications and modifications (such as reimbursement of attorney's fees) as more fully set forth below.

| SHOPPING CENTER | LANDLORD | STORE # | DEBTORS CURE $ | LL CURE $ | EX. |
|---|---|---|---|---|---|
| Ala Moana Center | GGP | 130 | $66,581.51 | $82,968.54 | A |
| Altamonte Mall | GGP | 54 | $29,500.67 | $33,218.48 | B |
| Baybrook Mall | GGP | 141 | $25,328.30 | @[3]* | n/a |

---

[3] The symbol "@" indicates that the landlord's cure amount is equal to or less than the amount shown by Debtors. Objecting Landlords will record the actual amount due after, and if, the Lease has been assumed and assigned.

| SHOPPING CENTER | LANDLORD | STORE # | DEBTORS CURE $ | LL CURE $ | EX. |
|---|---|---|---|---|---|
| Bayside Marketplace | GGP | 3 | $45,606.95 | $51,942.26 | C |
| Beachwood Place | GGP | 32 | $38,743.49 | $43,940.91 | D |
| Christiana Mall | GGP | 194 | $15,501.99 | $19,085.88 | E |
| Columbiana Centre | GGP | 143 | $19,101.26 | $23,203.74 | F |
| Cumberland Mall | GGP | 77 | $21,916.50 | $65,173.89 | G |
| Fashion Show | GGP | 9 | $62,874.73 | @ | n/a |
| First Colony Mall | GGP | 501 | $17,382.35 | @ | n/a |
| Glendale Galleria CA | GGP | 63 | $21,761.25 | @ | n/a |
| Kenwood Towne Centre | GGP | 65 | $29,980.89 | $34,243.76 | H |
| Lakeside Mall | GGP | 193 | $8,250.44 | $11,486.93 | I |
| Mall of Louisiana | GGP | 522 | $18,872.08 | $24,671.70 | J |
| Natick Mall | GGP | 116 | $39,662.94 | $44,903.92 | K |
| North Star Mall | GGP | 5 | $21,801.53 | @ | n/a |
| Northridge Fashion Center | GGP | 264 | $32,944.08 | $25,133.01 | n/a |
| Oxmoor Center | GGP | 98 | $31,243.37 | $35,484.95 | L |
| Park Meadows | GGP | 250 | $48,363.28 | $55,479.15 | M |
| Pembroke Lakes Mall | GGP | 93 | $27,027.28 | $64,827.11 | N |
| Perimeter Mall | GGP | 43 | $21,811.06 | $26,419.22 | O |
| Providence Place | GGP | 196 | $25,802.85 | $32,643.44 | P |
| Staten Island Mall Phase I | GGP | 145 | $31,778.88 | $50,787.77 | Q |
| Stonebriar Centre | GGP | 203 | $21,739.95 | @ | n/a |
| The Grand Canal Shoppes | GGP | 194 | $93,151.62 | @ | n/a |
| The Mall in Columbia | GGP | 192 | $38,504.45 | @ | R |
| The Oaks Mall | GGP | 260 | $26,328.44 | $29,833.47 | S |
| The Shops at LaCantera | GGP | 290 | $20,124.97 | @ | n/a |
| The Woodlands Mall | GGP | 293 | $20,563.11 | @ | n/a |
| Towson Town Center | GGP | 89 | $38,557.67 | $42,350.90 | T |
| Village of Merrick Park | GGP | 220 | $33,461.16 | $40,093.96 | U |
| Willowbrook NJ | GGP | 61 | $41,151.69 | $55,085.58 | V |
| Dallas Galleria | Galleria | 14 | $22,506.87 | @ | n/a |
| Memorial City Mall | Metro | 218 | $26,191.33 | @[4] | n/a |

---

[4] Although the Memorial City cure amount is slightly less than the amount stated by Debtors, the Debtors' amount includes January rent, which has been paid, but does not include year-end tax reconciliations billed on January 31, 2015.

8

15. Objecting Landlords further aver that additional amounts, not as yet known, may also be due with regard to calendar years 2014 and 2015, such as year-end adjustments to various items including, but not limited to, real estate taxes, common area maintenance ("CAM"), percentage rent and insurance. Section 365(b) of the Code requires that a debtor cure all defaults in conjunction with a lease assumption. Since certain accrued, unbilled items may not have been invoiced to date, there can be no default for the failure to pay same. (See ¶¶ 18 & 19, *infra*).

16. Objecting Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings. Objecting Landlords estimate their attorneys' fees through the projected Closing Date will be, on average, $1,000.00 per Lease.

17. In addition to the monetary obligations that Debtors must satisfy under Section 365 of the Bankruptcy Code, Objecting Landlords' Leases also provide that Debtors must indemnify and hold Objecting Landlords harmless with regard to existing claims as well as with regard to events which may have occurred pre-assignment but which are not made known to Objecting Landlords or Debtors until some time post-assumption. Accordingly Debtors must be required to evidence, or obtain adequate insurance in order to guaranty (by way of purchase of a "tail" or otherwise) that their indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries which occur at the leaseholds, where an Objecting Landlord is joined as a party defendant, damage and destruction to the property by Debtors or their agents, claims for environmental damage or environmental clean up, *etc.*[5]

---

[5] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Objecting Landlords' locations.

**Liabilities for Year-End Adjustments**

18. The lessees under Objecting Landlords' Leases are responsible for year-end adjustments to items such as common area maintenance, insurance, taxes, percentage rent and other items that are paid during the course of the year on an estimated basis. Generally the year-end adjustment, or true-up, of these categories does not take place until several months after the close of the landlord's fiscal year. Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, unpaid year-end adjustments, and those adjustments that may currently be accruing, are not a part of the cure obligation of the Debtors. The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.

19. Objecting Landlords, therefore, request that language be inserted into any Sale Order to provide that the Proposed Assignee shall be responsible for all unpaid year-end 2014 and 2015 adjustments, whether accruing prior to or after the effective date of assumption of the Lease(s), when such charges become due in accordance with the terms of the Leases. In default thereof, a suitable escrow per lease of the greater of $5,000.00 or 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Objecting Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Lease(s).

**Assumption and Amendment Agreement**

20. Objecting Landlords request that, as a condition to any order approving assumption and assignment of Objecting Landlords' Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall

10

become directly obligated to Objecting Landlords and the provisions of Objecting Landlords' Leases regarding notice addresses will be modified. (See Exhibit "W")

### Objections to Sale Order

21. Objecting Landlords reserve the right to object to any proposed Sale Order once a "winning bidder" has been selected and a final proposed Sale Order filed of record.

### Reservation of Rights

22. Objecting Landlords reserve the right to make such other and further objections as may be appropriate when a proposed assignee and/or winning bidder is identified.

### Joinder in Other Objections

23. Objecting Landlords hereby join in the objections filed by Debtors' other landlords and creditors to the extent not inconsistent herewith.

WHEREFORE, Objecting Landlords respectfully request that the Court enter an Order consistent with the foregoing objections; and for such other and further relief as may be just and proper under all of the circumstances.

Dated: March 2, 2015  
Wilmington, Delaware

*/s/ Leslie C. Heilman*
Tobey M. Daluz, Esquire (No. 3939)
Matthew G. Summers, Esquire (No. 5533)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: daluzt@ballardspahr.com
      summersm@ballardspahr.com
      heilmanl@ballardspahr.com

and

David L. Pollack
(Admitted *pro hac vice*)
BALLARD SPAHR LLP
51st Fl - Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania  19103
Phone: (215) 864-8325
Fax: (215) 864-9473
E-mail: pollack@ballardspahr.com

*Attorneys for GGP Limited Partnership MetroNational Corp. and Galleria Mall Investors LLC*