IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (MFW) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | Re. Docket No. 13 |

## ORDER APPROVING SALE OF ALL OR SUBSTANTIALLY ALL OF DEBTORS' ASSETS AND GRANTING RELATED RELIEF

Upon consideration of the *Debtors' Motion for Orders (I)(A) Authorizing Entry Into Agency Agreement, (B) Authorizing Bidding Protections, (C) Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III) Granting Related Relief* (the "Motion");[2] and it appearing that the relief requested is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and the Debtors and Great American Group WF, LLC (the "Agent")

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

[2] All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion or in the Agency Agreement.

having agreed upon terms and conditions for the Agent to act as the Debtors' exclusive agent to conduct sales (the "Sale") of certain of the Debtors' assets, including, without limitation, the Merchandise, Owned FF&E, Intellectual Property and the designation rights (the "Designation Rights") described in Section 17 of the Agency Agreement (collectively the "Assets"), which terms and conditions are set forth in that certain Agency Agreement, by and between the Agent and Debtors, which is attached hereto as Exhibit A (the "Agency Agreement"); and the transaction represented by the Agency Agreement having been determined to be the highest and best offer for the Assets; and a hearing having been held on February 23, 2015 (the "Bidding Procedures Hearing"), whereupon the Court entered an Order approving bidding procedures [Docket No. 196] (the "Bidding Procedures Order"); and a sale hearing having been held on March 3, 2015 (the "Sale Hearing") to consider the remaining relief requested in the Motion and approval of the Agency Agreement; and appearances of all interested parties having been noted on the record of the Sale Hearing; and upon the Declarations of Daniel Shea and Mark Renzi and upon all of the proceedings had before the Court (including but not limited to the testimony and other evidence proffered or adduced at the Sale Hearing); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish good, sufficient and just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT:[2]

A.    **Jurisdiction:** This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134.  Approval of the Debtors' entry into the Agency Agreement, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.    **Venue:** Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.    **Statutory Predicates:** The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of the Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

D.    **Notice:** Proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding Procedures Order.  No other or further notice is required.

E.    **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801

---

[2]    The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

DOCS_DE:197869.10 11903-001

Attn: David L. Buchbinder, Esq., (ii) counsel to Salus Capital Partners, LLC, as lender under the

Debtors' postpetition debtor in possession financing agreement (the "DIP Lender") and the

prepetition lenders (together with the DIP Lender, the "Secured Lenders"), Choate Hall &

Stewart, Two International Place, Boston, MA 02110, Attn: John F. Ventola, and DiConza

Traurig Kadish, LLP, 630 Third Avenue – 7th Floor, New York, NY 10017, Attn: Maura I.

Russell, Esq. (iii) the Office of the United States Attorney for the District of Delaware, 844 King

Street, Suite 2207, Wilmington, Delaware 19801 Attn: David L. Buchbinder, Esq., (iv) counsel

to the Creditors' Committee, Otterbourg, P.C., 230 Park Avenue, New York, NY 10169 Attn:

David M. Posner, Esq. and Bayard, P.A., 222 Delaware Avenue – Suite 900, Wilmington, DE

19801 Attn: Scott D. Cousins, Esq., (v) all parties who are known to assert any lien, claim,

interest or encumbrance in or upon any of the Assets, (vi) all lessors of leases for the Stores, (vii)

all applicable federal, state, and local taxing authorities having jurisdiction over any Store or any

of the Assets, including, without limitation, the Internal Revenue Service (collectively, the

"Taxing Authorities"), (viii) all governmental entities known by the Debtors to have an interest

in regulating the Sale, (ix) the state attorney general in each state in which the Debtors operate a

Store, (x) all parties identified by the Debtors as potentially interested purchasers, (xi) the Agent

and (xii) all other applicable parties in interest, including all entities on the general case service

list as of the date of entry of the Bidding Procedures Order ((i) through (xii) collectively, the

"Notice Parties"). Objections, if any, to the Motion have been withdrawn or resolved and, to the

extent not withdrawn or resolved, are hereby overruled.

DOCS_DE:197869.10 11903-001

F.      **Marketing Process:**  As demonstrated by: (i) the Shea Declaration, (ii) the Renzi Declaration, (ii) the testimony and other evidence proffered or adduced at the Sale Hearing and (iii) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, the Debtors have thoroughly marketed the Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or who the Debtors believed may have had an interest in acquiring or liquidating the Assets, to submit competing bids.  The Debtors and the Agent have respectively negotiated and undertaken their roles leading to the Sale and entry into the Agency Agreement in a diligent, non-collusive, fair and good faith manner.  The Debtors have conducted the marketing and sale process as set forth in and in accordance with the Motion and the Bidding Procedures Order.

G.      **Highest and Best Offer:**  The Agency Agreement attached hereto as **Exhibit A**, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtors for the Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.  There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sale.

H.      **Business Judgment:**  The Debtors' decision to (i) enter into the Agency Agreement, and (ii) perform under and make payments required by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties

in interest.  The Debtors have articulated good and sufficient reasons for the approval of the

Agency Agreement and the Sale.

     **I.**     **Personally Identifiable Information:**  The transactions contemplated by the

Agency Agreement do include the sale or lease of personally identifiable information, as defined

in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets

containing personally identifiable information) in a manner consistent with the Debtors' existing

privacy policy as of the Petition Date.

     **J.**     **Time of the Essence:**  Time is of the essence in effectuating the Agency

Agreement and proceeding with the Sale contemplated therein without interruption.  Based on

the record of the Bidding Procedures Hearing, the Sale Hearing, the Shea Declaration, the Renzi

Declaration and for the reasons stated on the record at the Sale Hearing, the Sale in accordance

with the terms of the Agency Agreement and this Order must be commenced as soon as possible

following entry of this Order, but in no event later than March 6, 2015 (the "Sale

Commencement Date"), to maximize the value that the Agent may realize from the Sale, and the

value that the Debtors may realize from entering into the Agency Agreement.  Accordingly,

cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a)

and 6004(h) and permit the immediate effectiveness of this Order.

     **K.**     **Sale Free and Clear:**  The Debtors are the sole and lawful owners of the Assets.

The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors'

estates within the meaning of section 541(a) of the Bankruptcy Code.  A sale of the Assets other

than one free and clear, to the greatest extent allowed by law, of liens, claims, encumbrances,

defenses (it being understood that the Assets shall not be sold free and clear of any defenses that

do not constitute interests in the assets for purposes of section 363(f) of the Bankruptcy Code),

rights of setoff and interests of any kind, including, without limitation, security interests of

whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges,

deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements,

charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court

or foreign or domestic governmental entity, taxes (including foreign, state, local and ad valorem

taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims

for reimbursement, contribution, indemnity or exoneration, successor, product, environmental,

tax, labor, ERISA, CERCLA, alter ego and other liabilities, obligations, causes of action,

contract rights and claims, in each case, of any kind or nature (including, without limitation, all

"claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-

petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or

unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded

or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory,

matured or unmatured, legal or equitable (collectively, "Encumbrances") and without the

protections of this Order would hinder the Debtors' ability to obtain the consideration provided

for in the Agency Agreement and, thus, would impact materially and adversely the value that the

Debtors' estates would be able to obtain for the sale of such Assets.  But for the protections

afforded to the Agent under the Bankruptcy Code and this Order, the Agent would not have

offered to pay the consideration contemplated in the Agency Agreement.  In addition, each entity

DOCS_DE:197869.10 11903-001

with an Encumbrance upon the Assets, (i) has consented to the Sale and the sale and disposition of the Assets in the manner contemplated by the Agency Agreement and this Order or is deemed to have consented to the Sale and the sale and disposition of the Assets in the manner contemplated by the Agency Agreement and this Order, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the Agency Agreement and the consummation of the Sale and the other transactions contemplated thereby free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

L.    **Arms-length Sale:** The consideration to be paid by the Agent under the Agency Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair and adequate consideration for the right to serve as the Debtors' exclusive agent to conduct the Sale of the Assets and the other rights granted to the Agent by the Agency Agreement and this Order under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of all applicable jurisdictions, including, without limitation, the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and reasonable under these circumstances

8

and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.

**M.**    **Good Faith:** The Debtors, their management and their board of directors, and the Agent, its members and its officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith. The Agency Agreement between the Agent and the Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code. The Agent and any party identified by the Agent in accordance with the terms of the Agency Agreement shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is reversed, modified, amended or vacated on appeal or by a subsequent order of this Court or any other court. The Debtors were free to deal with any other party interested in buying or selling on behalf of the Debtors' estate some or all of the Assets. Neither the Debtors nor the Agent has engaged in any conduct that would cause or permit the Sale, the Agency Agreement, or any related action or the transactions contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. The Agent has not violated section 363(n) of the Bankruptcy Code by any action or inaction and the transactions approved by this Order are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code. Specifically, the Agent has not acted in a collusive manner with any person nor was it controlled by any agreement among bidders. The Agent's prospective performance and payment of

9

amounts owing under the Agency Agreement are in good faith and for valid business purposes and uses.

N.      **Insider Status:**  The Agent is not an "insider" or "affiliate" of the Debtors as those terms are defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

O.      **Security Interests:**  The liens provided for in the Agency Agreement and this Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value for the Debtors' estates.  The absence of such protections would impact materially and adversely the value available to the Debtors in the liquidation of their stores in partnership with a liquidation agent.  But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement.  In addition, the Secured Lenders which hold a security interest in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in Paragraph 37 of this Order.

P.      **Corporate Authority:**  Subject to the entry of this Order, the Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the

10

Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) have taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

Q.    **No Successor Liability:** No sale, transfer or other disposition of the Assets, the Additional Agent Merchandise or any other property pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtors or their respective estates.

R.    **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. Entry into the Agency Agreement does not constitute a sub rosa chapter 11 plan.

S.    **Approval Order:** This Order shall constitute the Approval Order as contemplated by the Agency Agreement.

11

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.      **Motion Granted, Objections Overruled**

        1.      The relief requested in the Motion is granted as set forth herein.

        2.      Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

B.      **Agency Agreement Approved and Authorized**

        3.      The Agency Agreement is approved pursuant to sections 105 and 363 of the Bankruptcy Code.  Subject to any limitations imposed by this Order, the Debtors are hereby authorized and empowered to enter into and perform under the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated therein (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including (without limitation) the Debtors, the Creditors' Committee, the DIP Lender, any successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the Court)), including, without limitation, the exercise of Designation Rights (which Designation Rights include, among other things, the obligation to provide adequate assurance of future performance and pay all Cure Amounts) is hereby approved in its entirety and is incorporated herein by reference.  The failure to include specifically any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it

DOCS_DE:197869.10  11903-001

being the intent of the Court that, unless provided otherwise in this Order, the Agency

Agreement and all of its provisions, payments and transactions, be authorized and approved in

their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually

dependent.

4.      The Debtors are authorized, pursuant to sections 105 and 363 of the

Bankruptcy Code and solely in accordance with the Agency Agreement, to retain the Agent to

conduct the Sale and to sell the Assets and the Additional Agent Merchandise in the manner

contemplated by the Agency Agreement.

5.      All amounts payable to the Agent under the Agency Agreement shall be

payable to the Agent without the need for any application of the Agent therefor or any further

order of the Court.   The Guaranteed Transaction Consideration and any other amounts due to the

Debtors under the Agency Agreement shall be applied by the Debtors as provided for in Interim

and Final DIP Orders.

6.      Subject to the provisions of this Order, the Debtors and the Agent are

hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct

the Sale, consummate the sale of the Assets and the Additional Agent Merchandise and take all

actions reasonably related thereto or arising in connection therewith, in each case in accordance

with the Agency Agreement and (a) the sale guidelines (the "GOB Sale Guidelines") attached

hereto as **Exhibit B**, which GOB Sale Guidelines are hereby approved in their entirety or (b) as

otherwise agreed in writing by the Agent and any landlord.

DOCS_DE:197869.10 11903-001

7.     Pursuant to section 363(b) of the Bankruptcy Code, and subject to the provisions of this Order, the Debtors, the Agent, and each of their respective officers, employees and agents are hereby authorized to execute such documents and to take any and all such actions as may be necessary or desirable to carry out the Sale, consummate the sale of the Assets and the Additional Agent Merchandise and effectuate or implement the Agency Agreement and each of the transactions and related actions contemplated or set forth therein (including, without limitation, the Sale and the Designation Rights). Anthony DiPippa, the Debtors' Chief Financial Officer, and Mark Renzi, the Debtors' Chief Restructuring Officer, and/or such other person(s) as are expressly designated to act on the Debtors' behalf, are specifically authorized to act on behalf of the Debtors in connection with the Sale and the sale of the Assets and the Additional Agent Merchandise and no other consents or approvals are necessary or required for the Debtors to carry out the Sale, consummate the sale of the Assets and the Additional Agent Merchandise and effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein, including, without limitation, the Designation Rights.

C.     **Order Binding**

8.     This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or

14

who may be required to report or insure any title or state of title in or to the Assets or the Additional Agent Merchandise.

9.      This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding. The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) or reorganization or liquidation of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code. Any trustee appointed in this case shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and the Agent and any such trustee shall be and hereby are authorized to

15

perform under the Agency Agreement upon the appointment of the trustee without the need for

further order of this Court.

**D.      Good Faith.**

           10.      Entry into the Agency Agreement is undertaken by the parties thereto in

good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent

shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this

Order is reversed, modified, amended or vacated on appeal or by a subsequent order of this Court

or any other court.  The reversal, modification, amendment or vacatur on appeal or by a

subsequent order of this Court or any other court of the authorization provided herein to enter

into the Agency Agreement and consummate the transactions contemplated thereby shall not

affect the validity of such transactions (including, without limitation, the Sale or the liens or

priority authorized or created under the Agency Agreement or this Order), unless such

authorization is duly stayed pending such appeal.  The Agent is entitled to all of the benefits and

protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.  The transactions

contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n)

of the Bankruptcy Code.

**E.      Conduct of the Sale**

           11.      Except as otherwise provided in the Agency Agreement or this Order, and

subject to the terms thereof, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall

be authorized to sell all Merchandise, Owned FF&E, and Intellectual Property, as well as the

Additional Agent Merchandise to be sold pursuant to the Agency Agreement, free and clear of

16

any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Secured Lenders whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing Encumbrances encumbering all or any portion of the Assets, the Proceeds or any proceeds of the foregoing attaching only to the Guaranteed Transaction Consideration and, subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other amounts payable by the Agent to the Debtors under the Agency Agreement, with the same validity, priority, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist. For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the Sale.

12. If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive

17

evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

13.    Subject to the occurrence of the Sale Commencement Date, all entities that are presently in possession of some or all of the Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

14.    The Debtors and the Agent shall not extend the Sale Termination Date beyond May 31, 2015 unless extended by mutual written agreement of the Debtors and the Agent, and subject to the prior written consent of the DIP Lender, in its sole discretion, following a commensurate extension of the expiration date of the Agent Letter of Credit.

15.    During the Sale Term, Agent shall be granted a limited royalty free license and right to use until the Sale Termination Date the trademarks, trade names, logos, customer lists, websites, URL, social media, mailing lists and email lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of the Agency Agreement.

16.    Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency

Agreement, including, without limitation, conducting and advertising of the Sale (at the contractual rates charged to the Debtors prior to the Petition Date) in accordance with the Agency Agreement, the GOB Sale Guidelines, and this Order. Agent shall be authorized to include Additional Agent Merchandise in the Sale.

17.    Any amounts owed by the Debtors to Agent under the Agency Agreement shall be granted the status of superpriority claims pursuant to section 364(c) of Bankruptcy Code senior to all other superpriority claims, including, without limitation to the superpriority claims of the Secured Lenders; provided that until the Debtors receive payment in full of the Guaranteed Transaction Consideration and any other amounts due to the Debtors under the Agency Agreement and Agent delivers the Letter of Credit, any superpriority claim granted to Agent shall be junior and subordinate in all respects to the superpriority claims of the Secured Lenders but solely to the extent of the amount of the unpaid portion of the Guaranteed Transaction Consideration, Expenses, and such other amounts due to the Debtors under the Agency Agreement.

18.    Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental

DOCS_DE:197869.10  11903-001

laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order or the Agency Agreement shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 19 hereunder. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

19. <u>Disputes Between Government Units and the Debtor or the Agent</u>. To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement that is not a General Law, but instead is specifically directed at regulating "going

20

out of business," "store closing," "sale on everything," "total liquidation," "everything must go,"
or similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the
"GOB Laws"), including laws restricting safe, professional and non-deceptive, customary
advertising such as signs, banners, posting of signage, and use of sign-walkers solely in
connection with the Sale and including ordinances establishing license or permit requirements,
waiting periods, time limits or bulk sale restrictions that would otherwise apply to the Sale
(collectively, the "Liquidation Laws"), the following provisions shall apply:

        a.     Provided that the Sale is conducted in accordance with the terms of
this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in
the laws of many Governmental Units that exempt court-ordered sales from their provisions, the
Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and,
subject to Paragraphs 19 through 21 herein, are authorized to take such actions as may be
necessary and appropriate to implement the Agency Agreement, to conduct the Sale and to
advertise, post signs and banners and otherwise promote the Sale as a "going out of business,"
"store closing," "sale on everything," "total liquidation," "everything must go," or similarly
themed sale (including, without limitation, by means of media advertising, interior and exterior
banners, A-frames, and similar signage and the use of sign walkers and street signage) without
further consent of any person, in each case in accordance with the terms of this Order, the
Agency Agreement, the GOB Sale Guidelines or as otherwise agreed in writing by the Agent and
any landlord without the necessity of further showing compliance with any such GOB Laws and
Liquidation Laws.

DOCS_DE:197869.10 11903-001

b.       Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale will be held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the Sale will be held; and (iv) the chief legal counsel for each such local jurisdiction.

c.       To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within fifteen (15) days following service of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter. If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.       In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's

22

conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        e.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) through (d) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

        20.      Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner advertising and the Debtors and the Agent are unable to resolve the matter consensually with the Governmental Unit, any party may request an immediate telephonic

hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

21.    To the extent that the Debtors are subject to any state "fast pay" laws in connection with the Sale, then the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of (a) the Debtors' next regularly scheduled payroll and (b) seven (7) calendar days following the termination date of the relevant employee.

22.    Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" or similar provisions. The Agent and landlords of the Stores are authorized to enter into separate agreements and/or side letters ("Side Letters") between themselves modifying the GOB Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 19 through 21 (provided that in no event shall such Side Letters impose additional costs, expense or liability upon the Debtors without the prior written consent of the Debtors). In the event of any conflict between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter shall control. In the event of a dispute regarding the Guidelines or any Side Letter, counsel for

the Debtors, the applicable landlord, and the Agent shall meet and confer to resolve the dispute. In the event that the parties are unable to resolve the dispute, any party seeking relief may request a prompt hearing before the Court to resolve such dispute.

23.    Except as expressly provided for herein or in the GOB Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 19 through 21 shall apply), no person or entity, including but not limited to any utility company, Internet service provider, website service or hosting provider, landlord, licensor, creditor or other interested party or any person acting for or on behalf of the foregoing shall take any action to directly or indirectly prevent, interfere with, impede or otherwise hinder consummation of the Sale or the other transactions contemplated by the Agency Agreement, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale or the other transactions contemplated by the Agency Agreement, and all such parties and persons of every nature and description, including landlords, licensors, creditors, utility companies, Internet service providers, website service or hosting providers and other interested parties and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct or advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of the Sale and the other transactions contemplated by the Agency Agreement and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Stores that might in any way directly or indirectly impede, obstruct or otherwise interfere with or adversely affect the conduct or advertising and promotion

25

(including the posting of signs and exterior banners or the use of sign-walkers) of the Sale and the other transactions contemplated by the Agency Agreement or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

24.    The Agent shall have the right to use the Stores and 3PL and all related services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the GOB Sale Guidelines, this Order and any Side Letters.

25.    The Agent shall be permitted to include in the Sale Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement; provided that the aggregate cost value of Additional Agent Merchandise acquired from parties other than the Debtors' existing vendors shall not exceed the lesser of $1,500,000 and 15% of the aggregate Cost Value of the Merchandise.  Any transactions relating to the Additional Agent Merchandise are, shall be construed as, and are acknowledged by the Debtors to be a true consignment from Agent to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of New York (the "UCC").  Agent is hereby granted a first priority security interest in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise Proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional

26

Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds). Subject to the terms of the Agency Agreement, and solely to the extent applicable, the proceeds of the sales of Additional Agent Merchandise sold at a particular Store shall be taken into account when calculating any percentage rent due pursuant to the terms of the applicable lease agreement. Any Additional Agent Merchandise acquired from parties other than the Debtors' existing vendors must be marked in such other manner so as to distinguish the sale of such Additional Agent Merchandise from the sale of Merchandise and with sufficient information provided at the applicable Store such that a reasonable consumer can identify such Additional Agent Merchandise as other than Merchandise.

26.     During the Sale Term applicable to any Store and for purposes of conducting the Sale at such Store, Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, such Store and the assets currently located at such Store, in each case subject to the extent of Debtors' rights and entitlement to use the same, and the services provided at such Store to the extent Debtors are entitled to such services; and the Debtors shall not assign, reject or otherwise terminate any lease relating to any such Store, or vacate any such store, where such assignment, rejection, termination or vacatur, would have an effective date prior to the applicable Sale Termination Date or Vacate Date for such Store.

27.     To the extent Agent is owed any amounts in respect of overfunding in respect of the Guaranteed Transaction Consideration (including, without limitation, the

27

Adjustment Amount), the Debtors are unable to or otherwise for any reason fails to reimburse such amount and the Secured Lenders have received such amount, the Secured Lenders shall, within two (2) business days after written request by Agent disgorge and remit to Agent the portion, if any, of such amount that is undisputed or that has been determined to be owing to Agent by the Court.

28.    Nothing in the Agency Agreement or this Order shall (a) alter or affect the Debtors' obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

29.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as applicable, are permitted to abandon property of the Debtors' estates (including, without limitation, Merchant Consignment Goods and Owned FF&E) in accordance with the terms and provisions of the Agency Agreement, without the Debtors or the Agent incurring liability to any person or entity; *provided, however*, that, unless the Agent otherwise consents, the Debtors may only abandon property located in any store (and, if applicable, the distribution center) on or after the applicable Vacate Date.  In the event of any such abandonment, all applicable landlords shall be authorized to dispose of such property without any liability to any individual or entity that may claim an interest in such abandoned property, and such

28

abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto.

30.    To the extent that the Debtors propose to sell or abandon computers (including software) and/or cash registers and any other point of sale Owned FF&E located at the Stores (collectively, "POS Equipment") or any other files or records which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors (and not the Agent) shall remove the Confidential Information from such items before such sale or abandonment, and unless otherwise notified by Debtors in writing to the contrary, the Agent shall be entitled to assume and presume that the Debtors have satisfactorily completed such steps at or prior to the time of any such sale, abandonment or other disposition.

31.    During the first 30 days of the Sale Term only, the Agent shall accept the Debtors' validly issued gift cards, gift certificates, merchandise credits and other similar credits issued by the Debtors, if any, as well as the Debtors' customer membership or customer loyalty discount programs, in any transaction conducted in connection with the Sale pursuant to the provisions of Section 8.6 of the Agency Agreement, and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Sections 8.6 and 8.7 of the Agency Agreement. Upon commencement of the Sale Term, the Debtors shall expend reasonable efforts to notify customers of the date after which gift cards will not be accepted, including providing notice to customers via email, post on the Debtors' social media accounts (e.g. Facebook), and notices in applicable stores. The Agent shall include

DOCS_DE:197869.10 11903-001

the date by which gift cards will no longer be accepted during the Sale Term in any print advertising relating to the Sale.

32.     During the first 30 days of the Sale Term only, the Agent shall accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date pursuant to the provisions of Section 8.5 of the Agency Agreement, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased, and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Section 8.7 of the Agency Agreement.

33.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Subject to the terms of the Agency Agreement, the Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

34.     Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale, the sale of the Assets and the Additional Agent Merchandise or the other transactions contemplated

30

by the Agency Agreement shall be deemed to constitute an assumption by the Agent of any of the Debtors' obligations relating to any of the Debtors' employees. Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

35.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the collection, reporting and payment of any and all sales taxes is the legal responsibility of the Debtors. Subject to the terms of the Agency Agreement, the Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected. The Agent shall collect, remit to Debtors, and account for sales taxes as and to the extent provided in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

36.    Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer the Assets and the Additional Agent Merchandise among the Stores and 3PL. The Agent is authorized to sell

31

the Debtors' owned furniture, fixtures and equipment and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement.

**F.      Liens Granted To Agent**

37.      Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have, effective upon payment by the Agent of the Initial Guaranteed Transaction Consideration on the Payment Date and delivery of the Letter of Credit to the Secured Lenders, a valid, duly perfected first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 of the Agency Agreement; (v) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of the Debtors to the Agent under the Agency Agreement.  For the avoidance of doubt, the Agent Collateral shall not include the Guaranteed Transaction Consideration, or any other amount payable by the Agent to the Debtors under the Agency Agreement or any proceeds thereof.  Upon entry of this Order, payment of the Initial Guaranteed Transaction Consideration and delivery of the Letter of Credit to the Secured Lenders, the security interest granted to the Agent pursuant to the Agency Agreement and hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.  Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Secured Lenders and

DOCS_DE:197869.10 11903-001

the Debtors), the Agent's security interests and liens in the Agent Collateral created under the Agency Agreement and hereunder are (i) validly created, (ii) perfected, and (iii) senior to all other liens and security interests, provided, however, that (x) until the Debtors receive payment in full of the Guaranteed Transaction Consideration, the Expenses, and such other amounts due to the Debtors hereunder, the security interest granted to Agent under the Agency Agreement and hereunder shall be junior and subordinate in all respects to the security interests of the Secured Lenders in the Agent Collateral (subject to the carve out for professionals in the Bankruptcy Case), but solely to the extent and amount of the unpaid portion of the any of the Guaranteed Transaction Consideration, the Expenses, and such other amounts due to the Debtors under the Agency Agreement, and (y) upon payment in full of the Guaranteed Transaction Consideration, the Expenses, and such other amounts due to the Debtors under the Agency Agreement, any security interest or lien of the Secured Lenders in the Agent Collateral and the carve out for professionals in the Bankruptcy Case, shall each be junior and subordinate in all respects to the security interest and liens of the Agent in the Agent Collateral. The Debtors shall cooperate with the Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by the Agent in connection with the security interests and liens granted under the Agency Agreement. For the avoidance of all doubt, the liens and security interests of the Secured Lenders shall at all times be subject to the carve-out for professionals in the Bankruptcy Case. The Debtors will not sell, grant, assign or transfer any security interest in, or permit to exist any encumbrance on, any of the Agent Collateral other than in favor of the Agent and the Secured Lenders. In the event of a Default by the Debtors

33

hereunder, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC.

38.    The Debtors are authorized to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Assets as such Encumbrances may have been recorded or may otherwise exist, in accordance with the terms of this Order. Any Encumbrances of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax or similar tax arising from the transfer of the Assets to the Agent shall be filed against the Debtors' estate and shall not be asserted against the Agent.  The Agent has not assumed or otherwise become obligated, liable or responsible for any Encumbrances against any of the Debtors, regardless of whether any such Encumbrance is contingent or not, arises at law or in equity or otherwise, is existing on the date hereof or arises thereafter, and relates to or arises out of the Debtors business, the Assets, any excluded assets or otherwise (including, without limitation, any Encumbrances (x) based on any successor or transferee liability theory or (y) relating to the pre-petition or post-petition operation of the Debtors' business, the Assets or the use of the Assets).  In particular, the Agent (A) shall have no successor liability whatsoever with respect to any Encumbrances of any nature that may exist against any of the Debtors (or any predecessor or affiliate of any of the Debtors), (B) shall not be, or be deemed to be, (i) a successor-in-interest or within the meaning of any law, rule, regulation or theory, including any revenue, pension, labor, ERISA, bulk transfer, products liability, tax, environmental, antitrust, product line, de facto merger, substantial continuity,

34

successor or transferee liability or similar law, rule regulation or theory or (ii) a joint employer, co-employer or successor employer with the Debtors, (C) shall have no obligations to pay the Debtors' wages, bonuses, commissions, severance pay, vacation pay, continuation of coverage under COBRA, claims arising out of employment and termination of employment, WARN Act claims (if any), pension, welfare, retiree medical coverage, fringe benefits or any other benefits or payments of any kind to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise and (D) shall have no liability under fast pay laws with respect to any employees of the Debtors.  Pursuant to sections 105(a) and 363 of the Bankruptcy Code, and unless otherwise explicitly provided for in the Order or the Agency Agreement, all persons, Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code and including their administrative agencies, departments, and officials (including officials maintaining any authority relating to environmental, labor or health and safety laws)) and other entities (including (I) all parties holding any Encumbrances against any of the Debtors, their estates or their assets and (II) the Debtors' employees and former employees) are hereby enjoined from taking any action (including (a) asserting or prosecuting any Encumbrance or commencing or continuing in any manner any action or other proceeding of any kind) that seeks to impose liability or any other Encumbrance upon (or collect, offset or recover against) the Agent, any affiliate, successor or assign thereof, or the Assets or the Additional Agent Merchandise by reason of Agent's retention pursuant the Agency Agreement and this Order or the Agent's disposition of the Assets and/or the Additional Agent Merchandise pursuant to the Agency Agreement and this Order, for any Encumbrance of any kind that may be

35

asserted against the Debtors, the Debtors' business, the Assets, any excluded assets or otherwise (as such Encumbrances exist immediately prior to the closing), including the Encumbrances described in the preceding sentences of this Paragraph 38.

39.     The provisions of this Order shall be self-executing, and neither the Debtors nor the Agent shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.  However, the Debtors and the Agent and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Agent deem necessary or appropriate to implement and effectuate the terms of the Agency Agreement and  this Order.

40.     The Agent shall not be obligated to (i) continue or maintain in effect, or assume any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreement to which any Debtors are a party or has any responsibility therefor, including, without limitation, medical, welfare and pension benefits payable after retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee pension plan or the termination of any such plan, provided however that nothing in this Paragraph 40 shall abrogate any of the Agent's obligations to pay any Expenses in accordance with the terms of the Agency Agreement.

**G.     Other Provisions**

DOCS_DE:197869.10 11903-001

41.     The Designation Rights set forth in the Agency Agreement are approved in their entirety.  Nothing contained herein shall obviate the requirement of (i) a separately noticed motion seeking the assumption and assignment of any executory contract or unexpired lease, which such motion shall include the applicable Cure Amount, if any, and any Store landlord's right, to object to such motion are expressly preserved without prejudice; (ii) the payment of Cure Amounts in connection with the assumption and assignment of any executory contract or unexpired lease; provided, however, the Debtors shall cooperate with the Agent to ensure the transfer of all Intellectual Property, including, but not limited to, seeking further orders of this Court that may be necessary or advisable to effectuate such transfers; (iii) the Debtors to comply with section 365(d)(3) of the Bankruptcy Code during the Designation Rights Period, including, but not limited to, the required insurance, maintenance and care of the Stores; and (iv) the provision of Drop Notices by the Debtors to the landlords of the Stores within three (3) Business Days of receipt.  Nothing contained herein shall prevent the landlords from dressing, covering and barricading Store windows once the Store closing sale is completed.

42.     The Agent is a party in interest and, through and including completion of the Final Reconciliation, Agent shall be entitled to be heard on all issues in the Bankruptcy Case related to the Agency Agreement or the transactions contemplated thereby.

43.     Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in this chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the

DOCS_DE:197869.10 11903-001

Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency

Agreement or the terms of this Order.

44.    The Agency Agreement and related documents may be modified, amended

or supplemented by the parties thereto in accordance with the terms thereof without further order

of this Court, but such changes may not affect the provisions applicable to Governmental Units

in paragraph 19 through 21 of this Order.

45.    Except with respect to any Governmental Unit (as to which the provisions

of Paragraphs 19 through 21 shall apply), this Court shall retain exclusive jurisdiction with

regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not

limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict

or in any way limit banner and signwalker advertising, including with respect to any allegations

that such advertising is not being conducted in a safe, professional and non-deceptive manner,

(ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with

the Sale or the other transactions contemplated by the Agency Agreement, (iii) any other

disputes related to the Sale or the other transactions contemplated by the Agency Agreement or

the enforcement of the Agency Agreement, and (iv) to protect the Debtors and/or the Agent

against any assertions of Encumbrances.  No such parties or person shall take any action against

the Debtors, the Agent, the landlords at the Stores or the Sale or the other transactions

contemplated by the Agency Agreement until this Court has resolved such dispute.  This Court

shall hear the request of such parties or persons with respect to any such disputes on an expedited

basis, as may be appropriate under the circumstances.

DOCS_DE:197869.10 11903-001

46.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement. For the avoidance of doubt, the Debtors are not subject to any stay in the implementation of the transactions contemplated by the Agency Agreement.

47.     Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Sale Motion and the jurisdiction of the Court.

48.     This Order constitutes an authorization of the conduct of the Debtors and the Agent in connection herewith.

49.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the GOB Sale Guidelines, this Order shall govern and control.

50.     In the event Merchant or Lender notifies Agent of its intention to draw on the Letter of Credit, Agent shall be entitled to an emergency hearing by this Court sufficient to determine whether such draw is permitted under the terms of the Agency Agreement prior to the occurrence of such draw.

51.     Notwithstanding anything to the contrary contained in the Motion, all liens of Certain Texas Tax Entities (as defined in Docket No. 144) and the Local Texas Tax

39

Authorities (as defined in Docket No. 221) (collectively, the "Tax Authorities") shall attach to the gross sale proceeds with the same validity, priority and extent that they attached to any assets sold. The proceeds of the sale, as and when the sale of business personal property encumbered by such Tax Authorities' ad valorem tax liens are sold, shall be used to satisfy the respective Tax Authorities prior to payment of any other junior secured lienholders, to the extent of the validity and amount of such tax liens and the value of the collateral to which they attach, absent written consent with such Tax Authority or further order of the Court. As adequate protection of the Tax Authorities' liens, the Debtors or the DIP Lender, acting on behalf of the Debtors, shall segregate the amount of $125,000 on its books and records (the "Segregated Tax Amount") to which the liens and claims of the Tax Authorities shall attach with the same validity, extent and priority as currently exists with respect to their collateral. The Segregated Tax Amount shall secure the claims of the Texas Tax Authorities for unpaid 2014 and 2015 ad valorem business personal property taxes, however, the Segregated Tax Amount shall not serve as a cap or a limit on the amount which may be paid to the Tax Authorities as their claims may ultimately be allowed by the Court. The Debtors' and the DIP Lender's right to object to the claims of the Tax Authorities is hereby reserved. It is further ordered that the Tax Authorities will receive payment of their claims upon agreement of the Debtors, DIP Lender, Tax Authorities and Creditors' Committee or, if the parties cannot agree, pursuant to an order of this Court.

52.    Upon the Closing of the Sale to Agent, the Stalking Horse shall be entitled to payment of the Break-Up Fee, Cash Expense Reimbursement, Signage Costs Obligations and Purchase Order Obligations (each as defined in the Bidding Procedures Order), subject to and in

DOCS_DE:197869.10 11903-001

accordance with the terms of the Bidding Procedures Order.  For the avoidance of doubt, (1) with respect to the Signage Costs Obligations, the Agent (or to the extent Agent has funded the amounts to the Debtors, the Debtors) shall reimburse the Stalking Horse for the reasonable costs, fees, and expenses actually incurred and paid by the Stalking Horse in acquiring signage and other advertising and promotional material in connection with the Sale (excluding any cost of capital incurred in connection therewith), in an aggregate amount not to exceed $100,000, and (2) with respect to the Purchase Order Obligations, the Agent shall reimburse the Stalking Horse for (and assume, including without limitation by replacing all letters of credit delivered by the Stalking Horse to an applicable vendor) all written commitments of the Stalking Horse to purchase Additional Agent Merchandise as identified in writing by the Stalking Horse and the Stalking Horse shall be released from all obligations of any kind under or with respect to such commitments.   To the extent that the actual Cash Expense Reimbursement and Signage Costs Obligations do not exceed their respective estimated $100,000 cost, the Agent will receive a credit for such amounts.

      53.     Notwithstanding anything in the Agency Agreement or this Order to the contrary:

      a.     <u>Modified Benefit Cap.</u>  Section 4.1(c) of the Agency Agreement is deemed modified to reflect that the Benefit Cap shall be in an amount up to twenty-four percent (24%) of base payroll (including commissions) for all Retained Employees in the Stores.

      b.     <u>Cure Amount Obligation.</u> The Agent shall have exclusive responsibility for paying any and all pre-petition and post-petition cure amounts required

pursuant to sections 365(b) and (f) of the Bankruptcy Code as a condition to the assignment of an executory contract or unexpired lease granted pursuant to the Designation Rights transferred hereunder. For the avoidance of doubt, the rights of contract counter-parties and landlords to object to the assignment of an executory contract or unexpired lease pursuant to the Designation Rights are hereby preserved.

      c.    <u>Carrying Costs.</u>  The Agent shall have exclusive responsibility for paying any and all costs and expenses customarily or historically incurred or paid by the Debtors and associated with each asset subject to the Designation Rights through and including the earlier of (i) the closing of a transaction with respect to each asset and (ii) the end of the Designation Rights Period.

      d.    <u>Closing Not Dependent Upon Assignments.</u> In no event shall the assumption and assignment of a particular executory contract or unexpired lease be a condition to the Closing of the Sale and any such assumption and assignment will be the subject of a separate motion, as appropriate.

      e.    <u>Sharing of Lease Disposition Proceeds.</u>  The Debtors and the Agent shall share in any net proceeds from the disposition of real estate leases as follows: one-third (1/3) to the Debtors and two-thirds (2/3) to the Agent.

DOCS_DE:197869.10 11903-001

54.    In accordance with the Bidding Procedures Order and the Bidding

Procedures approved thereby, and as described on the record of the Auction, Back-Up Bidders

were selected upon the close of the Auction.


Dated: March ___, 2015

_____
Honorable Mary F. Walrath
United States Bankruptcy Judge

DOCS_DE:197869.10  11903-001